UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-21095-CIV-TORRES

DELROY ANTHONY GOLDING

    Plaintiff,

vs.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY, et al,

    Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants' Motion for Summary Judgment ("Defendants' Motion") [D.E. 59-1]. Delroy Anthony Golding ("Plaintiff") filed a Response ("Plaintiff's Response") [D.E. 64, 65]. No reply was filed. After a careful review of the record and the arguments presented, and for the reasons that follow, we deny Defendants' Motion.

## I.   BACKGROUND

Plaintiff is a native and citizen of Jamaica who was admitted to the United States on October 21, 1989 as a temporary agricultural worker.[1] On May 17, 1990, Plaintiff filed an application for adjustment of status based on his marriage to Nancy Golding, a United States citizen by birth. Plaintiff became a lawful permanent resident on February 13, 1991, and on March 21, 2001, he filed an application for naturalization. Over the next few years, Plaintiff appeared at several review hearings on his application for naturalization. On December 22,

---

    [1] The record provides the basis for the summary of facts that are material to the issues presented, as well as any findings that may be found in the analysis portion of this report and recommendation.

2004, Defendants denied Plaintiff's Petition following his administrative appeal [D.E. 59-6] thus exhausting all administrative remedies.

Plaintiff commenced this action on April 21, 2005 when he filed a Petition for *De Novo* Review of Application for Naturalization ("Plaintiff's Petition") [D.E. 1].  Defendants moved to dismiss Plaintiff's Petition [D.E. 18] and argued that Plaintiff was statutorily ineligible for naturalization because he was not lawfully admitted as a permanent resident in accordance with the applicable provisions of the Immigration and Nationality Act ("INA").  As a second basis for dismissal, Defendants stressed that Plaintiff was not a person of "good moral character" as defined by the INA.  In support of their motion to dismiss, Defendants tried to show, *inter alia*, that Plaintiff gained admission to the United States by presenting fraudulent identification documents; that he was repeatedly arrested and engaged in acts of domestic violence while in the United States; that he did not truthfully answer questions on the N-400 application; that during the naturalization process he failed to disclose a juvenile conviction in Jamaica.

In response to the Motion to Dismiss [D.E. 19], Plaintiff refuted these allegations, and maintained that his application for naturalization was properly pled, and that he was improperly denied citizenship by the Department of Homeland Security.  Ultimately, the Court sided with Plaintiff and denied Defendants' Motion to Dismiss as follows:

> After an examination of Plaintiff's Petition, the Court finds that the Plaintiff has alleged that he is statutorily eligible for naturalization under the INA. Therefore, the Court finds that Plaintiff has stated facts upon which relief may be granted and determines that Defendants' Motion must be denied.  While the issues raised by Defendants in their Motion may preclude the granting of the Petition, this is a question to be decided after a review of all the evidence in this matter and on a motion for summary judgment.

[D.E. 23 at 3]. The parties thus continued to litigate this matter, and readied the case for trial. Just prior to trial, Defendants requested a continuance to file this motion for summary judgment.

Defendants' Motion asserts the identical arguments previously raised, namely that Plaintiff's Petition should be denied as a matter of law because Plaintiff was unlawfully admitted as a permanent resident, and because he lacks the requisite moral character under the INA. In reviewing these charges, we find there are genuine issues of material fact that preclude summary judgment.

## II.   ANALYSIS

### A.   *Summary Judgment*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that

there is a genuine for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

### B.   *Review of a Denial of Naturalization*

Pursuant to the INA, federal courts have jurisdiction to review de novo the denial of an application for naturalization. 8 U.S.C. § 1421(c). Section 1421(c) provides as follows:

> A person whose application for naturalization under this subchapter is denied ... may seek review of such denial before the United States district court for the district in which such person resides.... Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

*Id.*

To be eligible for citizenship, an applicant must demonstrate that he: (1) was lawfully admitted to the United States as a permanent resident; (2) has resided continuously, and has been physically present in the United States for the required statutory period; and (3) is a person of good moral character and has been for at least the five years preceding the filing of his naturalization application. *See* 8 U.S.C. § 1427, 1429; *see also* 8 C.F.R. § 316.2.

Here, Defendants do not contest that Plaintiff meets the second qualification. They assert, however, the Plaintiff was not lawfully admitted to the United States as a permanent resident, and that he failed to establish that he has been a person of good moral character for the relevant statutory period.

### 1.   *Was Plaintiff Lawfully Admitted for Permanent Residence?*

The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, and such status not having changed. 8 U.S.C. § 1101(a)(20). Additionally:

> [t]he burden of proof shall be upon such person [seeking naturalization] to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States, but in presenting such proof he shall be entitled to the production of his immigrant visa, if any, or of other entry document, if any, and of any other documents and records ... pertaining to such entry.

8 U.S.C. § 1429.

Plaintiff's application for permanent residency was approved on February 13, 1991. Plaintiff's Response attached a valid United States Department of Justice Immigration and Naturalization Service Memorandum of Record of Lawful Permanent Resident [D.E. 65-3], his wife's validated Petition for Alien Relative [D.E. 65-11], and a Permanent Resident Card [D.E. 65-14] as proof of lawful entry into the United States. At first blush, Plaintiff meets the requisite burden.

However, Plaintiff's status as a permanent resident does not necessitate a finding that he meets the "lawfully admitted" prong under the INA. The Government can still contest his visa eligibility as a basis to deny naturalization. To gauge visa eligibility, we look to see whether the individual was excludable at the time of entry:

> [W]hat is essential is lawful status, not regular procedure. An alien is subject to deportation if "at the time of entry [he] was within one or more of the classes of aliens excludable by law existing at the time of such entry." This clause overlaps the provision for deportation of any person who "is in the United States in violation of [the INA] or in violation of any other law of the United States." By providing for the deportation of excludable aliens, the Act implies that such persons, though present in the United States, were not "lawfully admitted." The Act lists [ ] classes of persons who are "ineligible to receive visas and shall be excluded from admission into the United States." It would be paradoxical if a person who was ineligible to receive a visa and should have been excluded from admission became lawfully admitted simply because, by error, he was not excluded.

*Matter of Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983) (remanding case for trial de novo to determine whether applicant for naturalization had been excludable under the INA, and whether applicant was "lawfully admitted" as the INA requires for naturalization) (internal

citations omitted). Even in circumstances where an individual has already been granted citizenship, the Government can contest the validity of a visa in a denaturalization proceeding. *See United States v. Tittjung*, 235 F.3d 330, 336 (7th Cir. 2000) ("We do not believe, nor have we found any case law to suggest that a certificate of naturalization acts as a *tabula rasa*, thereby precluding us from examining the validity of the visa upon which that certificate was granted.").

For instance, in *Fedorenko v. United States*, the Supreme Court was called upon to decide whether an individual's admission to the United States was illegally procured, thereby invalidating his citizenship. 449 U.S. 490, 505, 101 S. Ct. 737, 746, 66 L. Ed. 2d 686 (1981) (citizenship challenged on the basis that his service as a concentration camp guard rendered him ineligible for a visa). The Court's majority opinion affirmed the decision to denaturalize the petitioner based on the finding that he was visa ineligible. Granted, *Fedorenko* dealt with denaturalization under section 1451, and here we are concerned with the denial of citizenship under section 1427, but the inquiry is the same.

We turn, therefore, to Defendants' argument that Plaintiff was excludable at entry. One basis for excludability that renders an alien ineligible for a visa – the only ground, in fact, raised by Defendants – is an entry procured by fraud or the willful misrepresentation of a material fact. 8 U.S.C. § 1182(a)(6)(C). This basis for excludability is satisfied by a finding that the misrepresentation was deliberate and voluntary. *See Forbes v. INS,* 48 F.3d 439, 442 (9th Cir. 1995) (citing *Espinoza-Espinoza v. INS*, 554 F.2d 921, 925 (9th Cir. 1977)). Proof of an intent to deceive is not required. Rather, knowledge of the falsity of a representation is sufficient. *Id.* The test of whether "concealments or misrepresentations [are] material is whether they ha[ve] a natural tendency to influence the decisions of the Immigration and Naturalization Service." *Kungys v. United States*, 485 U.S. 759, 772, 108 S. Ct. 1537, 1547, 99

L. Ed. 2d 839 (1988). "A misrepresentation or concealment can be said to have such a tendency ... if honest representations 'would predictably have disclosed other facts relevant to [the applicant's] qualifications.'" *Id.* at 783, 108 S. Ct. at 1553 (Brennan, J. concurring) (quoting *id.* at 774, 108 S. Ct. at 1548 (opinion of Scalia, J., joined by Rehnquist, C.J., and Brennan, J.)). The government must "produce [] evidence sufficient to raise a fair inference that a statutory disqualifying fact actually existed." *Id.* at 783, 108 S. Ct. at 1553 (Brennan, J., concurring). *See also United States v. Puerta*, 982 F.2d 1297, 1303-04 (9th Cir. 1992) (reviewing opinions in *Kungys* and concluding that "Justice Brennan's view of materiality controls").

Defendants posit that Plaintiff willfully entered the United States under an identity card with false information, and subsequently used the name "Michael Genas" as a farm worker. [D.E. 59-1 at 2-3]. Defendants also maintain that Plaintiff willfully misrepresented material information on his application for permanent residence. *Id.* To be specific, one of the questions on a visa application asks the applicant to disclose whether he has ever been arrested or convicted of any law or ordinance. Plaintiff did not disclose his juvenile arrest for "unlawful wounding." [D.E. 59-10].

There are, however, remaining issues of fact based on Plaintiff's version of the events that led to his admission into the country. It is clear from the record that Plaintiff entered the United States using an identity card with false information. He acknowledges as much in his deposition testimony. Nevertheless, Plaintiff denies that the misrepresentation was willful or material. He responds that the identification card was mistakenly given to him by the Jamaican government's Ministry of Labor, that he disclosed this information to the Inspector at the airport, and that the Inspector still allowed Plaintiff to enter the United States. [D.E. 64-1 at 2-5]. Plaintiff also acknowledges that he worked in the United States as a farm laborer

and received compensation from his work payable to "Michael Genas." [D.E. 65-12 at 17-18]. But, he denies that the misrepresentation was willful, and blames the Jamaican government for providing him with the wrong identification card. With respect to the failure to disclose his arrest in Jamaica, Plaintiff explains that he thought his juvenile record was sealed. The fact that Plaintiff did not believe he was obliged to disclose the arrest arguably negates the basis for excludability under section 1182(a)(6)(C), *a fortiori* he would be visa eligible.

Furthermore, there are unresolved questions with respect to materiality. Defendants provide no evidence whatsoever that these purported misrepresentations or concealments would have influenced the decisions of the INA in granting residence. *See, e.g., Forbes v. Immigration and Naturalization Service*, 48 F.3d 439, 443-44 (9th Cir. 1995) (visa applicant's misrepresentation in failing to disclose arrest incident on his application for permanent resident visa was not material, disqualifying fact, where visa officer would have issues visas if applicant had disclosed information on pending criminal charges, and charges against applicant were later dismissed). In fact, in the parties' Joint Pre-Trial Stipulation, Defendants concede that the following issues of fact needed to be litigated: (i) whether Plaintiff's entry into the United States was fraudulent; (ii) whether Plaintiff willfully and fraudulently used the name "Michael Genas" upon arrival in the United States and as a farm worker; (iii) whether Plaintiff was arrested, tried as an adult and sentenced for 18 months probation in Jamaica for unlawful wounding; and (iv) whether Plaintiff acquired lawful permanent residence by fraud. Clearly, there are questions of fact as to whether Plaintiff's actions are tantamount to a fraudulent, willful misrepresentation of material facts.

In sum, Defendants did not produce evidence sufficient to raise a fair inference as a matter of law that a statutory disqualifying fact actually existed at the time of entry. *Kungys v. United States*, 485 U.S. at 783 (Brennan, J., concurring). Statutory prerequisites require

that an individual be lawfully admitted to the United States for permanent residence. *Fedorenko*, 449 U.S. at 514-15.  Lawful admission for permanent residence in turn requires that an individual possess a valid unexpired immigrant visa. *Id.; see also* 8 U.S.C. § 1181(a). We find there are unresolved questions of fact that preclude summary judgment as to whether Plaintiff was "lawfully admitted for permanent residence."

### 2.   *Did Plaintiff Have the Requisite "Good Moral Character" under the INA?*

An applicant for United States citizenship must demonstrate that he is a person of "good moral character."  8 U.S.C. § 1427(a)(3); 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10.  The INA does not define good moral character except by setting forth a non-exhaustive list of instances in which a person shall *not* be regarded as one of good moral character.  8 U.S.C. § 1101(f). Among the reasons a person might not be regarded as having good moral character include: one who is a habitual drunkard or gambler; one who has served 180 days or more in jail; one who has engaged in conduct relating to assistance in Nazi persecution or participation in genocide or torture. 8 U.S.C. § 1101(f)(1), (4)-(8).  Title Eight of the Federal Regulations further identifies a list of characteristics that, if present in a naturalization applicant, preclude a finding of good moral character. 8 C.F.R. § 316.10(b).  Put another way, sections 1101 and 316 help us to identify *bad* moral character.

Not surprisingly, good moral character is highly subjective and difficult to define. *Biba v. U.S. Dept. of Homeland Security,* No. 06-CV-60-J-32MCR, 2006 WL 1814318, at *4 (M.D. Fla. 2006).  Consequently, Courts analyze good moral character on a case by case basis, and the must take into account "the standard of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). Logically, the first step is to determine whether Plaintiff's "good moral character" passes muster under sections 1101(f) or 316(b), as those sections

identify specific, objective factors that indicate a lack of good moral character. Then, we can filter Plaintiff's character through the subjective test under section 316(a)(2).

Unfortunately, Defendants fail to cite to the controlling statute of section 1101(f), so we are left guessing as to which section of the statute they feel is in play. Defendants' Motion primarily argues that Plaintiff failed to disclose various arrests and a juvenile conviction during the naturalization process. If true, these facts trigger section 1101(f)(6), where a person is considered to lack good moral character if he gives false testimony for the purpose of obtaining benefits under the INA. Defendants also fail to identify the particular section of 8 C.F.R. § 316.10(b). We assume they rely on section 316.10(b)(2)(vi), wherein an applicant shall be found to lack good moral character if during the statutory period the applicant:

> Has given false testimony to obtain any benefit from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit; this prohibition applies regardless of whether the information provided in the false testimony was material, in the sense that if given truthfully it would have rendered ineligible for benefits either the applicant or the person on whose behalf the applicant sought the benefit.

Defendants' Motion is filled with allegations, but lacks conclusive evidence that Plaintiff provided "false testimony to obtain any benefit from the Act." *See, e.g., United States v. Samaei*, 260 F. Supp. 2d 1223 (M.D. Fla. 2003) (government used affidavits in support of its motion for summary judgment seeking denaturalization). It is also unclear whether Defendants suggest that Plaintiff falsely testified to gain residency, or just citizenship. Simply put, we find that Defendants fail to conclusively establish that Plaintiff committed one of the enumerated items in section 1101(f) or section 316(b).

Turning to section 316(a)(2), the very nature of the text, evaluating claims on good moral character on a "case-by-case basis," all but necessitates a trial given the facts here. The final Administrative Order denying Plaintiff's naturalization reads in pertinent part:

> In reviewing your arrest history and your testimony relating to your arrest history it is not reasonable or prudent for the Citizenship and Immigration Services to believe that you have established good moral character in accordance with 8 C.F.R. 316.10(a)(1) and 8 C.F.R. 316(b)(3).[2]

[D.E. 59-6 at 2].  Defendants denied Plaintiff's petition primarily because of outstanding arrests.  According to Plaintiff, he has been acquitted of these various charges.  Because Defendants did not file a reply, we are left to assume that Plaintiff was, in fact, absolved of criminal wrongdoing for these arrests.  We do not go so far as to adopt Plaintiff's unsupported assertion that arrests, without convictions, cannot support a finding that Plaintiff lacks good moral character. [D.E. 64-1 at 16].  At a minimum, however, we feel that Defendants did not meet their burden to show that there are no genuine issues of material fact as to Plaintiff's moral character.  The only case relied on by Defendants actually supports our position that a trial is needed to resolve this matter.  *Rico v. I.N.S.* 262 F. Supp. 2d 6, 7 (E.D.N.Y. 2003) (holding a hearing on a plaintiff's petition for de novo review, and allowing plaintiff to submit exhibits and provide testimony on his own behalf to try to establish good moral character).

* * *

---

[2] Section 316(b)(3) states that an applicant shall be found to lack good moral character if he committed unlawful acts that adversely reflect upon an applicant's moral character.  8 C.F.R. § 316(b)(3).

## *III.   CONCLUSION*

Based upon a thorough review of the record as a whole and the arguments in the parties' motions, we find that Defendants failed to show that there are no genuine issues of material fact for trial.  Defendants' Motion for Summary Judgment [D.E. 59-1] is **DENIED**.

Within ten (10) days of the date of entry of this order, the parties shall confer, and thereafter provide the Court with three (3) potential start dates for a specially set trial.  The potential start dates for trial must be within ninety (90) days of the entry of this order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of March, 2008.

EDWIN G. TORRES
United States Magistrate Judge

Copies provided to:
All counsel of record