## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 05-21095-CIV-TORRES

### CONSENT CASE

**DELROY ANTHONY GOLDING,**

     **Plaintiff,**

**v.**

**DEPARTMENT OF HOMELAND SECURITY,** *et al.*,

     **Defendants.**

_____/

### PLAINTIFF'S PROPOSED FINDINGS OF FACT
### AND CONCLUSION OF LAW

Plaintiff, by and through undersigned Counsel, files his Proposed Findings of Fact and Conclusions of Law as follows:

### FINDINGS OF FACT AND CONCLUSION OF LAW

This is an action for a *de novo* naturalization hearing pursuant to Title 8, United States Code (U.S.C.), Section 1421(c); Section 310(c) of the Immigration and Nationality Act (INA); and Title 8, Code of Federal Regulations (C.F.R.), Section 336.9, which was tried before the Court without a jury.

Plaintiff's last application for naturalization was denied by Defendants on September 15,

1

2003.  Plaintiff timely filed an application for review pursuant to 8 U.S.C. §1447(a), INA

§336(a).  On December 22, 2004, Defendants affirmed the denial of Plaintiff's application for

naturalization for his failure to establish eligibility for naturalization.  Plaintiff is alleging that his

application for naturalization was denied without statutory basis.

Having considered the testimony of witnesses, the exhibits, the arguments of counsel, and

the entire record, the Court makes the following findings of fact and conclusion of law.

## <u>FINDINGS OF FACT</u>

1.      Plaintiff is a citizen and national of Jamaica, who was admitted to the United

States on October 21, 1989 as a temporary agricultural worker under an agreement with

Osceola Farms Company.

2.      When Plaintiff was admitted to the United States on October 21, 1989, Plaintiff

was admitted under the assumed name Michael Genas.  Plaintiff produced an Identity

Card displaying his photograph and fingerprints upon entry into the United States.

Plaintiff contends that the Identity Card was issued by the Jamaican Ministry of Labor

bearing the name Michael Genas.

3.      Although Plaintiff abandoned his employment with Osceola Farms Company

before the expiration of the employment contract, Plaintiff married Nancy May Golding,

2

a U.S. Citizen, on April 4, 1990 in Fort Lauderdale, Florida, and thereafter applied for

adjustment of status pursuant to 8 U.S.C. §1255(a), INA §245(a).  On Plaintiff's

Application for Permanent Residence (Form I-485), and on Plaintiff's ex-wife's Petition

for Alien Relative (Form I-130), Plaintiff listed the name Michael Genas under the

section "other names used".

4.        On February 13, 1991, Defendants approved the Immigrant Petition for Alien

Relative (Form I-130) together with Plaintiff's Application for Permanent Residence

(Form I-485).  Subsequently, Defendants approved Plaintiff's Petition to remove the

Conditions on his Permanent Residence (Form I-751).

5.        On February 15, 1996, Plaintiff was arrested for aggravated stalking in Deerfield

Beach, Florida.  The charge was amended to threats and extortion in the second degree.

On May 30, 1996, Plaintiff was found not guilty by jury.

6.        On December 17, 1999, Plaintiff was arrested for possession of stolen

property/handgun in Fort Lauderdale, Florida.  On January 7, 2000, the charges were not

filed.

7.        On April 24, 2000, Plaintiff was arrested for knowingly, intentionally and

unlawfully conspiring to distribute marijuana and aiding and abetting the possession and

distribution of marijuana in Houston, Texas.  On December 20, 2000, Plaintiff was found

not guilty by jury on all charges.

8.　　　　　On April 5, 2002, Plaintiff was arrested in Boca Raton, Florida and charged with domestic battery.  On June 19, 2002, the Court found Plaintiff not guilty.

9.　　　　　Ms. Peni Flanders, the mother of Staci Flanders, Plaintiff's purported daughter, filed a temporary restraining orders against Plaintiff.  A paternity test, however, revealed that Plaintiff is not the Father.  Nevertheless, evidence was submitted showing that Plaintiff supported Staci Flanders financially even though he was not obligated to do so.

10.　　　　On December 13, 1996, Plaintiff filed an application for naturalization (Form N –400) with Defendants.  On October 13, 1999, Defendants issued Plaintiff an appointment to appear at Defendants' Application Support Center in Davie, Florida on November 2, 1999 to have his fingerprints taken in furtherance of his application for naturalization.  On August 30, 2000, Plaintiff's application for naturalization was denied by Defendants for Plaintiff's failure to have his fingerprints taken.  Plaintiff submitted an Application Information Worksheet issued by Defendants which verifies that Plaintiff was fingerprinted on November 2, 1999, as scheduled in the appointment notice.

11.　　　　Defendants submitted into evidence a second Application for Naturalization (Form N –400), signed by Plaintiff and dated October 25, 1999 but Defendants failed to submit a receipt notice or a copy of the application stamped receipted.  Based on the

evidence, it is presumed that the application was filed by Plaintiff but never adjudicated by Defendants.

12.	On March 21, 2001, Plaintiff filed another application for naturalization (Form N –400) with Defendants.  On Part 7, Question number 15.b., Plaintiff checked off that he had been arrested.  Notes on the application indicate that Plaintiff told the adjudicating officer that he had 3 arrests.  Although the application was stamped approved February 14, 2002, there is an "X" placed through the stamp.  On April 5, 2002, Defendants issued a letter to Plaintiff stating, "You were scheduled to appear for an Oath Ceremony for Naturalization on Thursday, March 28, 2002 at 12:00 PM.  Our records indicate you failed to appear for this ceremony.  You will be notified by INS of the date, place and time of your rescheduled Oath Ceremony."  Testimony was presented that Plaintiff appeared for an oath ceremony but was refused naturalization by Defendants since, at that time, there was no final disposition of the April 5, 2002 arrest for domestic battery.  On September 15, 2003, Defendants denied Plaintiff's application.  The denial letter states, "Review of your record in file shows that you committed unlawful acts that adversely reflect upon your moral character...Further review of record in file also shows that on January 11, 1995 you gave a false claim to United States citizenship to U.S. Border Patrol Officers in Ft. Lauderdale, Florida, while you attempted to enter the U.S."

13.	On October 17, 2003, Plaintiff filed a Request for Hearing on Decision in Naturalization Proceedings (Form N –336) with Defendants.  On December 22, 2004, the

request was denied by Defendants.  The denial letter states, "In reviewing your arrest

history and your testimony relating to your arrest history it is not reasonable or prudent

for the Citizenship and Immigration Services to believe that you have established good

moral character in accordance with 8 CFR 316.10(a)(1) and 8 CFR 316.10(b)(3)."

14.        On April 21, 2005, Plaintiff filed a Petition for a *de novo* Review of Application

for Naturalization with this Court.

## JURISDICTION

15.        Pursuant to 8 U.S.C. §1421(c), INA §310(c), jurisdiction lies with the instant

District Court.

## STANDARD OF REVIEW

16.        8 U.S.C. §1421(c), INA §310(c) provides that the review of the denial of an

application for naturalization by the United States District Court "will be de novo, and

the court will make its own findings of fact and conclusions of law.  The court may also

conduct, at the request of the petitioner, a hearing de novo on the application for

naturalization."

17.        "Judicial review of naturalization denials is always available and is de novo, and

is not limited to any administrative record but rather may be on facts established in and found by the district court de novo." *Aparicio v. Blakeway*, 302 F.3d 437 (5ᵗʰ Cir. 2002).

18.        "The statutory provision allows unsuccessful naturalization applicants to ask the district courts to review the INS's denial of their applications.  Upon request, the district court must undertake a full de novo review of the INS's denial.  The court may not rely on the INS's findings of fact or law and, on request, must hold its own hearing on the naturalization application.  Accordingly, *even if the INS is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the INS's findings or conclusions*."  *United States v. Hovsepian*, 359 F.3d 1144, 1162 (9ᵗʰ Cir. 2004) (en banc) (emphasis added).

19.        "By providing for a hearing in an open court on petitioner's demand in proceeding for naturalization, Congress did not intend mere court review of recommendations of naturalization examiner but rather a hearing de novo in which court must decide issues on testimony which it hears and in which neither testimony heard by examiner, his findings, or his recommendations are material."  *Petition of Cardines*, 366 F.Supp. 700 (D.C. Guam 1973).

20.        "Congress specifically calls for de novo review in naturalization cases, while ordering great deference in other immigration contexts.  We do not find this to be coincidental.  A person who is arguably entitled to be a United States citizen, with all of

the privileges citizenship entails, is not rightly at the grace of the Attorney General, as other aliens are often considered to be.  Therefore, before denying citizenship and the rights attendant to it, it would stand to reason that the district court should review the Attorney General's decision as if it were reviewing a citizen's claim that the government is unfairly denying him his rights. Section 1421(c) seems to reflect this logic by requiring district courts to make de novo findings of fact and law." *O'Sullivan v. United States Citizenship & Immigration Services*, 453 F.3d 809, 812 (7th Cir. 2006).

## REQUIREMENTS FOR NATURALIZATION

21.        In order to be eligible for naturalization, the applicant must establish that he has been admitted to the United States for permanent residence in accordance with all applicable provisions of the INA.  *See* INA §318, 8 U.S.C. §1429.   The applicant must be 18 years old.  *See* INA §334(b), 8 U.S.C. §1445(b).  The applicant must be a resident continuously for 5 years subsequent to obtaining lawful permanent residence.  *See* INA §316(a, 8 U.S.C. §1427(a) and 8 C.F.R. §316.5.  The applicant must have resided for at least three months within the state in which the petition was filed.  *See* INA §§316(a)(1), 319(a), 8 U.S.C. §§1427(a)(1), 1430(a).  The applicant must be physically present in the U.S. for at least one-half of the 5 years (or one-half of 3 years if the applicant is the spouse of a U.S. Citizen).  *See* INA §316(a), 8 U.S.C. §1427(a).  The applicant must have resided continuously within the United States from the date the application was filed up to the time of admission to citizenship.  *See* INA §316(a), 8 U.S.C. §1427(a)(2), 8 C.F.R.

8

§316.2(a)(6).  The applicant must not be absent from the U.S. for a continuous period of more than one year during the periods fo which continuous residence is required.  *See* 8 C.F.R. §316.5(c)(1)(ii).  The applicant must be a person of good moral character for the requisite 5 years prior to filing and up to the time of admission.  *See* INA §§316(a)(3), 319(a)(1); 8 U.S.C. §§1427(a)(3), 1430(a)(1); and 8 C.F.R. §§316.2(a)(7), 316.10, 329.2(d).  The applicant must be attached to the principles of the Constitution and well disposed to the good order and happiness of the United States.  *See* INA §316(a)(3), 8 U.S.C. §1427(a)(3), and 8 C.F.R. §316.11.  The applicant must be willing to "(A) bear arms on behalf of the United States when required by law, or (B) to perform noncombatant services in the Armed Forces of the United States when required by law, or (C) to perform work of national importance under civilian direction when required by the law."  *See* INA §337(a)(5)(A)-(C), 8 U.S.C. §1448(a)(5)(A)-(C).  The applicant must not be: barred as a subversive, INA §§313, 316(f), 8 U.S.C. §§1424, 1427(f), and 8 C.F.R. §313; a member of the communist party, INA §313(a), 8 U.S.C. §1424(a); a deserter during war time who was convicted by court martial or civil court, INA §314, 8 U.S.C. §1425; an alien who has removal proceedings pending against him/her or an outstanding and final order of deportation, INA §318, 8 U.S.C. §1429; or an alien who applied for and received relief from the Selective Service system based on his or her alienage, INA §315(a), 8 U.S.C. §1426(a).  The applicant must also demonstrate: an elementary level reading, writing and understanding of the English language, INA §312(a)(1), 8 U.S.C. §1423(a)(1), 8 C.F.R. §312.1; and a knowledge and understanding of the fundamentals of the history and government of the United States.  *See* INA

9

§312(a), 8 U.S.C. §1423(a), 8 C.F.R. §312.2.

## Plaintiff's Naturalization Petition

22.        Defendants denied Plaintiff's last application for naturalization stating "...it is not reasonable or prudent for the Citizenship and Immigration Services to believe that you have established good moral character in accordance with 8 CFR 316.10(a)(1) and 8 CFR 316.10(b)(3)."

## ISSUES PRESENTED

23.        One of the conditions to become a naturalized U.S. Citizen is that the applicant must be a lawful permanent resident.  *See* INA §318, 8 U.S.C. §1429.  Defendants claim that Plaintiff was not entitled to become a lawful permanent resident and, therefore, does not qualify for naturalization.

24.        An applicant for naturalization must also meet the requirements for good moral character as enumerated in INA §§316(a)(3), 319(a)(1), 8 U.S.C. §§1427(a)(3), 1430(a)(1) and as defined in INA §101(f), 8 U.S.C. §1101(f).  Defendants contend that Plaintiff does not possess the requisite good moral character required for naturalization.

25.        The Parties do not dispute that Plaintiff meets all of the other requirements for

naturalization.

## **BURDEN OF PROOF**

26.         Citizenship by naturalization is a privilege gained by those who meet the

qualifications imposed by Congress, the burden being upon the petitioner throughout to

establish his or her qualifications. *See* 8 U.S.C. §1429, INA §318.  "Plaintiff bears the

burden to show, by a preponderance of the evidence, that [he] is eligible in every respect

to become a United States citizen, and any doubts are resolved in favor of the United

States."  *See Berenyi v. Dist. Dir.,* 385 U.S. 630, 637 (1967).  "There must be strict

compliance with all the congressionally imposed prerequisites before conferring

citizenship."  *See Fedorenko v. U.S.*, 449 U.S. at 506-507, 101 S.Ct. at 747.

27.         "The burden of proof shall be upon such person to show that he entered the

United States lawfully, and the time, place, and manner of such entry into the United

States, but in presenting such proof he shall be entitled to the production of his immigrant

visa, if any, or of other entry document, if any, and of any other documents and records,

not considered by the Attorney General to be confidential, pertaining to such entry, in the

custody of the Service."  INA §318, 8 U.S.C. §1429.

28.         "An applicant for naturalization bears the burden of demonstrating that, during

the statutorily prescribed period, he or she has been and continues to be a person of good moral character...In accordance with section 101(f) of the Act, the Service shall evaluate claims of good moral character on a case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence."  8 C.F.R. §316.10.

29.         Citizenship by naturalization is a privilege gained by those who meet the qualifications imposed by Congress, the burden being upon the petitioner throughout to establish his or her qualifications. *See* 8 U.S.C. §1429, INA §318.  "Plaintiff bears the burden to show, by a preponderance of the evidence, that [he] is eligible in every respect to become a United States citizen, and any doubts are resolved in favor of the United States."  *See Berenyi v. Dist. Dir.,* 385 U.S. 630, 637 (1967).  "There must be strict compliance with all the congressionally imposed prerequisites before conferring citizenship."  *See Fedorenko v. U.S.*, 449 U.S. at 506-507, 101 S.Ct. at 747.

## CONCLUSIONS OF LAW

### A.  Lawful Admission as Permanent Residence

30.         Plaintiff submitted into evidence his lawful permanent resident card as evidence

of his status as a lawful permanent resident.  Plaintiff also submitted into evidence a

Form I-94 as temporary proof of his lawful permanent resident card which was presented

to Officer Michael Krawczyk during the administrative appeal of Plaintiff's application

for naturalization.  Pursuant to 8 C.F.R. §103.5b, lawful permanent resident status is

verified by reference to permanent resident cards.  If the lawful permanent resident has

not received his lawful permanent resident card (Form I-551), the regulations provide for

the issuance of a properly endorsed I-94.  *See* 8 C.F.R. §264.1(h).

31.        Although Plaintiff was issued proof of his lawful permanent residence by

Defendants, Defendants claim that Plaintiff's lawful permanent residence is not lawful.

32.        Both Plaintiff and Defendants agree that Plaintiff entered the United States

procuring an identity document which bears the name Michael Genas and not Delroy

Anthony Golding.  8 U.S.C. §1182(a)(6)(C), INA §212(a)(6)(C) states, "Any alien who,

by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to

procure or has procured) a visa, other documentation, or admission into the United States

or other benefit provided under this chapter is inadmissible."  8 U.S.C. §1182(I), INA

§212(I) authorizes a waiver and states,

> "The Attorney General may, in the discretion of the Attorney General, waive the
>
> application of clause (I) of subsection (a)(6)(C) of this section in the case of an
>
> immigrant who is the spouse, son, or daughter of a United States citizen or of an
>
> alien lawfully admitted for permanent residence if it is established to the

satisfaction of the Attorney General that the refusal of admission to the United

States of such immigrant alien would result in extreme hardship to the citizen or

lawfully resident spouse or parent of such an alien or, in the case of a VAWA

self-petitioner, the alien demonstrates extreme hardship to the alien or the alien's

United States citizen, lawful permanent resident, or qualified alien parent or

child."


33.         Since Plaintiff, at the time of his application for adjustment of status, was married

to a U.S. Citizen, he would have qualified to *apply* for a waiver.  However, the

Defendants' adjudications officer *did not request* that the Plaintiff submit a waiver,

*knowing* that Plaintiff entered the United States with an identity document bearing

someone else's name.  Plaintiff's application for adjustment of status (Form I-485) was

admitted into evidence as well as his ex-Wife's I-130 petition.  On both documents,

Plaintiff listed the name "Michael Genas" under "other names used."  The issue is

whether Plaintiff procured admission to the United States through fraud or willful

misrepresentation.  Although Plaintiff contends that the identity document used to gain

entry into the United States was issued with incorrect information by the Jamaican

Ministry of Labor, Defendants presented no evidence to contravene Plaintiff's testimony

that procurement of the document and subsequent entry into the United States was by

fraud or willful misrepresentation.


34.         In *Kungys v. U.S.*, 485 U.S. 759 (1988), the Supreme Court held that materiality is

14

a legal question of whether "misrepresentation or concealment was predictably capable of affecting, i.e., had a natural tendency to affect the official decision." The Supreme Court held in *U.S. v. Gaudin*, 115 S.Ct. 2310, 2319 (1995) that materiality is a mixed question of law and fact. In *Kungys, supra*, the Court established a four-part analysis of fraud or willful misrepresentation as it applies to denaturalization cases. The analysis requires that (1) the applicant must have misrepresented or concealed some fact; (2) the misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the applicant must have procured the benefit. The four-part analysis is all inclusive. Since Plaintiff did not conceal the fact that he entered the United States with a document bearing the assumed name Michael Genas and submitted a copy of the identity document and disclosed the assumed name on the application for adjustment of status and on his then-Wife's I-130 petition, full disclosure was made to Defendants during his application for permanent residency. Since the adjudicating officer did not request a waiver, and was fully aware of the Plaintiff's use of an assumed name, Plaintiff was not required to submit a waiver and, therefore, his application for permanent residency was properly granted. Furthermore, when Plaintiff applied to remove the conditions on his residency with Defendants (Form I-751), Defendants, after a second opportunity to review Plaintiff's file, again approved his application, granting him full and unconditional lawful permanent residence.

35.         There is no section on the Application for Naturalization (Form N –400) that asks the applicant about entry into the United States. "Put simply, the question of how

someone entered the country is not relevant to the determination of his eligibility for naturalization." *See U.S. v. Carriles*, 486 F.Supp. 2d 599 (W.D. Tx. 2007).

36.      Plaintiff's file was before Defendants' adjudication officers and supervisors when Plaintiff: (1) applied for adjustment of status; (2) applied to remove the conditions on his permanent residency; (3) applied for a replacement of his lawful permanent resident (Form I-90); (4) applied for naturalization on December 13, 1996; (5) applied for naturalization on March 21, 2001; (6) applied for a hearing on his denial of his application for naturalization on October 17, 2003; (7) and when Plaintiff appeared before Defendants for **numerous and all** appointments as scheduled by Defendants.   On ***none*** of these occasions, nor in any denial notices issued by Defendants, did Defendants ever claim that Plaintiff is not a lawful permanent resident of the United States or that he procured his permanent residency by fraud or willful misrepresentation.

37.      The requirement that the applicant for naturalization be lawfully admitted to the United States requires that the applicant prove that he was admitted to the United States as a lawful permanent resident by producing proof of his status.  INA §318, 8 U.S.C. §1429.  Although Defendants claim Plaintiff was not lawfully admitted, Defendants never placed Defendant in removal proceedings and nothing in Defendants' records indicate that he was not lawfully admitted as a permanent resident.  After a thorough review of Plaintiff's file over **15 years**, from 1990, when Plaintiff applied for adjustment of status, through 2005, when Plaintiff's filed this lawsuit, the issue of the validity of

16

Plaintiff's immigration status was **never** questioned by Defendants.  In fact, it was not questioned until **after** the filing of Plaintiff's lawsuit in 2005.

38.         The cases adjudicated under INA §318, 8 U.S.C. §1429 are cases where it was alleged that the applicant for naturalization could not present proof of a lawful admission or who was the subject of removal proceedings.  *See, for example, In re Ferenci*, 217 F.Supp. 714 (E.D. Pa. 1963), *In re Jocson*, 117 F.Supp. 528 (D.C. Hawaii 1954), *U.S. v. Jeu Foon*, 193 F.2d 117 (8th Cir. 1951), *Hing Lowe v. U.S.*, 230 F.2d 664 (9th Circuit 1956), and *Shomberg v. United States*, 75 S.Ct. 509, 348 U.S. 540, 99 L.Ed. 624 (US 1955).   None of the cases question a person who was already adjudicated a lawful permanent resident and who is not in removal proceedings.   Since Plaintiff has been a lawful permanent resident since February 13, 1991, and after Defendants multiple reviews of his file on many occasions since that time, Defendants have never initiated removal proceedings against Plaintiff.  Pursuant to 8 C.F.R. §§1.1(p), 1001.1(p), a lawful permanent resident, even if placed in removal proceedings, does not lose his or her status until a final administrative order of removal is issued.  *See also Perez-Rodriguez v. INS*, 3 F.3d 1074, 1077-79 (7th Cir. 1993), *Matter of Gunaydin*, 18 I&N Dec. 326 (BIA 1982), *aff'd*, 742 F.2d 776 (3d Cir. 1984) and *Etuk v. Slattery*, 936 F.2d 1433, 1447 (2d Cir. 1991).

39.         Since Plaintiff sustained his burden by proving his lawful admission into the United States as a permanent resident, and Defendants never previously placed Plaintiff

17

in removal proceedings or even questioned his immigration status, Plaintiff has met the

requirement of lawful permanent residence as required for naturalization pursuant to INA

§318, 8 U.S.C. §1429.


### B.  Good Moral Character


40.          Plaintiff's birth certificate indicates he was born May 8, 1968 in St. Catherine,

Jamaica.  Defendants submitted evidence that Plaintiff was arrested in Jamaica for the act

of unlawful wounding.  Documents from the Jamaica Constabulary state that Plaintiff

"was a juvenile at the time of conviction but was tried as an adult."  The Constabulary

states that access to juvenile records is restricted and Plaintiff was placed on probation

under section 10(1) of the Jamaican Probation of Offenders Act.


41.          Section 10(1) of the Jamaican Probation Offenders Act states,

> "Where a person is convicted of an offence and is released under a probation
>
> order, his conviction for that offence shall be disregarded for the purposes of any
>
> enactment by or under which any disqualification or disability is imposed upon
>
> convicted persons or by or under which provision is made for a different penalty
>
> in respect of a second or subsequent offence or in respect of an offence committed
>
> after previous conviction:
>
> Provided that if the probationer is subsequently sentenced for the original offence,

this section shall cease to apply in respect of that offence, and he shall be deemed, for the purposed of any such enactment imposing a disqualification or disability, to have been convicted on the date of sentence."

42.          A letter from the Jamaica Constabulary submitted into evidence states that Plaintiff was convicted in the Spanish Town Magistrate Court on September 10, 1984 for Unlawful Wounding and sentenced to 18 months Probation Order.  Plaintiff's birth certificate, Jamaican Passport and Lawful Permanent Residence Card indicate his date of birth is May 8, 1968.[1]  Therefore, Plaintiff was 16 years old when he was convicted. Under Jamaican law, "the criminal record of a person who is placed on probation is to be disregarded as a record that will, under any enactment, disqualify him or impose a disability."  *See* section 10(1) of the Jamaican Probation Offenders Act, supra.  Even if Plaintiff was tried as an adult, under U.S. law, a person that commits a crime while under the age of eighteen *may not be deemed inadmissible* if the crime was committed more than five years prior to the date of application for entry or for a visa to enter the United States.  *See* 8 U.S.C. §1182(a)(2)(A)(ii)(I), INA §212(a)(2)(A)(ii)(I).  Plaintiff was convicted on September 10, 1984 and Plaintiff entered the United States on October 21, 1989 - more than five years after commission of the act.  Furthermore, the crime of

_____

[1]Defendants submitted into evidence two Records of Sworn Statements, both dated September 7, 2004 and signed by Plaintiff.  Both documents were prepared by Mike Krawczyk, the District Adjudications Officer who interviewed Plaintiff on his Request for Hearing in Naturalization Proceedings (Form N -336).  Both documents state that Plaintiff's date of birth is May 8, 1964.  Defendants could not explain this discrepancy and Plaintiff claims it was an administrative error.

unlawful wounding is not enumerated in Title 18 of the U.S.C.  Since unlawful wounding

is not deemed criminal by U.S. standards, if Plaintiff was indeed convicted of a foreign

crime, it would have no bearing on his previous applications for adjustment of status or

naturalization.  *See Matter of McNaughton*, 16 I&N Dec. 569 (BIA 1978) and *Matter of*

*De La Nues*, 18 I&N Dec. 140 (BIA 1981).  Plaintiffs presented a separate document

from the Jamaica Constabulary which states that Plaintiff "does not appear in the

Criminal Records."

43.        Plaintiff testified that, since he successfully completed probation, he was told by

this Attorney in Jamaica and by the Jamaican Government that he would never have to

reveal that arrest again.  Plaintiff also testified that he mentioned the arrest to his former

Attorney, Roy Lucas, Esq., who prepared and filed his application for adjustment of

status with Defendants, and represented Plaintiff during his adjustment of status

interview.

44.        Although Plaintiff failed to disclose the arrest, he presented a reasonable

explanation for failure to do so.  He also relied on the professional advice and services

provided by his Attorney at that time.  His failure to disclose that arrest on his application

for adjustment of status was a result of "extenuating circumstances."  Nevertheless, a

conviction for unlawful wounding, while under the age of 18, pursuant to U.S. law, is not

a basis of inadmissibility.  *See* INA §212(a)(2)(A)(ii)(I), 8 U.S.C. §1182(a)(2)(A)(ii)(I).

Moreover, there is no statutory analogy in the U.S. Code for the offense of unlawful

20

wounding. Even if the arrest was revealed, there would be no basis to deny Plaintiff's application for adjustment of status as there was no ground of inadmissibility. Even if there was, it would have been considered a petty offense and would not be inadmissible pursuant to INA §212(a)(2)(A)(ii)(II), 8 U.S.C. §1182(a)(2)(A)(ii)(II)

45.        In a similar case, *Chan v. INS*, 2001 WL 521706 (E.D.N.Y. 2001), the Court found no evidence of bad moral character and granted the petitioner's application for naturalization. The Court held that the Petitioner's statements that he had not been arrested "were not misrepresentations aimed to deceive the INS; rather they appear to be the consequence of Chan's confusion, misunderstandings, limited command of English and lack of a full appreciation of the factors that would constitute and render impregnable his arrest under the American legal system."

46.        Similar to *Chan, supra*, although Plaintiff was arrested in Jamaica and sentenced to probation when he was 16 years old, Jamaican law states that the conviction is "disregarded" if the person convicted is released under probation. In its plain meaning "disregarded" means "to pay no attention to" or "treat as unworthy of regard or notice." *See* Merriam-Webster dictionary at www.merriam-webster.com under definition of "disregard." Therefore, we hold that Plaintiff's failure to admit a juvenile offense in Jamaica, under the circumstances, is *de minimis* and should not bear upon a finding of bad moral character.

21

47.         Although Plaintiff had been arrested in the United States, he was *never* convicted. The offense of arrest of a person does not prove bad moral character. *See Rein v. U.S.*, 69 F.2d 206 (3rd Circuit 1934), *Deluca v. Ashcroft*, 203 F.Supp.2d 1276, 1280 (M.D. Ala. 2002), and *U.S. v. Chandler*, 152 F.Supp. 169 (D.C. Md. 1957).

48.         8 U.S.C. §1101(f), INA §101(f) enumerates certain specific acts that statutorily find a person lacking good moral character.   8 U.S.C. §1101(f)(8), INA §101(f)(8) states, "The fact that any person is not within any of the foregoing classes shall not preclude a finding of that for other reasons such person is or was not of good moral character." Defendants claim that Plaintiff's arrest history puts him in this catch-all section.  8 C.F.R. §316.10(b)(3)(iii) states, "Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant...[c]ommitted unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b) (1) or (2)."

49.         Although Plaintiff has been arrested in the United States, he was either acquitted by a jury of his peers or by the Judge or the charges were never filed.  Plaintiff has never been convicted.  In *U.S. v. Dang*, 488 F.3d 1135 (9th Circuit 2007), the applicant for naturalization as found to lack good moral character pursuant to 8 C.F.R. §316.10(b)(3)(iii) because he was arrested and convicted for arson, fraud, and willful injury to a child.  In *U.S. v. Jean-Baptiste*, 395 F.3d 1190 (11th Circuit 2005), the Court

held that unlawful acts are those that "would rise to the level of criminality regardless of whether criminal prosecution was initiated."  In that denaturalization case, the Defendant had procured his naturalization by failing to reveal a drug conviction during his application for naturalization.  The Court held that the since Defendant committed unlawful acts during the pendency of his application for naturalization, for which he was convicted *after* becoming a naturalized U.S. Citizen, 8 C.F.R. §316.10(b)(3)(iii) applies. *See U.S. v. Jean-Baptiste, supra*.

50.      In the instant case, Defendants did not submit any evidence that Plaintiff had committed an unlawful act to which he did not already face criminal prosecution. Plaintiff's arrests all resulted in full adjudication by Courts of competent jurisdiction.  8 C.F.R. §316.10(b)(3)(iii), as a catch-all, is meant to allow the Defendants to find an applicant for naturalization lacking good moral character for applicants who have arrests *without* a final court disposition, applicants who *admit* to committing unlawful acts or any other evidence in Defendants' possession that would support a finding of the commission of an unlawful act.  In the instant case, Defendants failed to provide evidence of Plaintiff's unlawful acts that would rise to the level of criminality.  Although 8 C.F.R. §316.10(b)(3)(iii) is a catch-all, it is not a free-for-all for Defendants to find a lack of good moral character without concrete evidence.  Although a restraining order was issued against Plaintiff, from a complaint filed by Peni Flanders, extenuating circumstances were shown that Plaintiff paid the mother of his purported daughter money to support the child who Ms. Flanders alleged was Plaintiff's daughter.  Evidence was submitted in the form

23

of results from DNA testing proving that Plaintiff is, in fact, *not* the Father.  Testimony

was also heard that, nevertheless, Plaintiff continued to support the child after he found

out that he is not the biological father.


51.        Although Plaintiff was arrested for domestic violence against Ms. Joan Murphy,

both Plaintiff and Ms. Murphy testified that Plaintiff himself called the police and the

dispute was over keys.  Plaintiff was found not guilty on that charge.  In fact, Ms. Murphy

and Plaintiff subsequently married and share a life together.


52.        Defendant's witness, Citizenship Officer Larry Rodneff, testified that Plaintiff's

now Wife, Joan Murphy, told him, under oath, that Plaintiff had hit her.  However,

Defendants submitted no evidence to support that claim. The alleged statement occurred

in Officer Rodneff's Office without any other witnesses present and Defendants did not

submit any document supporting such conversation.  Plaintiff's witness, Joan Murphy,

testified that a Citizenship Officer asked her to change the disposition on Plaintiff's arrest

for domestic violence from not guilty to guilty.


53.        When Plaintiff appeared before Officer Michael Krawczyk for a hearing on his

appeal of the denial of Plaintiff's application for naturalization on September 7, 2004,

Defendants submitted two Records of Sworn Statement.  Defendants raised the issue that

Plaintiff's date of birth that appears on the Record of Sworn Statement states May 8, 1964.

24

Plaintiff's birth certificate indicates his date of birth is May 8, 1968. Office Michael Krawczyk testified that he prepared the Record of Sworn Statement. Although Plaintiff signed it, Plaintiff had previously testified that he constantly signs documents without first reading the contents. Furthermore, Plaintiff submitted into evidence temporary proof of permanent residency (Form I-94) which is dated March 22, 2004 and contains his birth date of May 8, 1968. Officer Krawczyk admitted that all applicants must submit photo identification in order to be interviewed to verify the identity of the applicant. Both Plaintiff's Driver's license and temporary proof of permanent residency (From I-94) have Plaintiff's date of birth as May 8, 1968.

54.      From the evidence submitted by Defendants, Defendants have procedures and forms in place to prepare sworn statements. However, *none* was created when Ms. Joan Murphy, who, at the time of Plaintiff's interview, was not yet married to Plaintiff, allegedly spoke to Officer Larry Rodneff about Plaintiff's application for naturalization.

55.      The September 15, 2003 denial of Plaintiff's application for naturalization states, "Review of your record in file shows that you committed unlawful acts that adversely reflect upon your moral character...Further review of record in file also shows that on January 11, 1995 you gave a false claim to United States citizenship to U.S. Border Patrol Officers in Ft. Lauderdale, Florida, while you attempted to enter the U.S."

56.        Defendants state in the denial letter that Plaintiff "committed unlawful act."

Evidence was submitted that Plaintiff was never convicted in the United States.  A

Memorandum dated January 11, 1995 was submitted into evidence which mentions a

meeting between Border Patrol Agents and Plaintiff.  Although the memorandum states

that Plaintiff mocked the agents, the memorandum states that the Agents determined that

he was a lawful permanent resident and released Plaintiff from custody.  Attached to the

memorandum is a Record of Deportable Alien (Form I-213) relating to a woman from

Guatemala (the name has been redacted) who was apprehended in Broward County,

Florida by the same officers who drafted the memorandum relating to Plaintiff - Officers

Jose Lopez and Paul Waldron.  The woman referred to on Form I-213 was charged with

entering the United States without inspection (EWI).  Plaintiff testified that he was asked

by the Agents if he is a citizen to which he responded he is a citizen of Jamaica.  There

was no evidence submitted by Defendants that Plaintiff ever attempted to enter the United

States by giving a false claim to U.S. citizenship and no evidence of any unlawful acts.

57.        Therefore, there in nothing in the record to contravene that Plaintiff possesses the

requisite good moral character required for naturalization pursuant to INA §§316(a)(3),

319(a)(1); 8 U.S.C. §§1427(a)(3), 1430(a)(1); and 8 C.F.R. §§316.2(a)(7), 316.10,

329.2(d).

58.        Since Plaintiff meets all of the requirements for naturalization, the Court,

therefore, concludes that judgment should be entered in Plaintiff's favor.

Hence, Plaintiff's Petition for naturalization is **HEREBY GRANTED**.


Dated:          June 9, 2008                         Respectfully submitted,

                Boca Raton, Florida

                                                     BRIAN G. BECKER, ESQ.

                                             By:     s/ Brian G. Becker, Esq.

                                                     Brian G. Becker, Esq.

                                                     Florida Bar No.: 0151629

                                                     Email: Brianbecker@ellisandged.com

                                                     ELLIS, GED & BODDEN, P.A.

                                                     7171 N. Federal Highway

                                                     Boca Raton, Florida 33487

                                                     Phone: (561) 995-1966

                                                     Fax:    (561) 953-0693

27

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 9, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Brian G. Becker, Esq.

Brian G. Becker, Esq.

**SERVICE LIST**

**Delroy Anthony Golding v. Department of Homeland Security, et. al.**
**Case No. 05-21095-Torres**
**Consent Case**

Milton Aponte

Assistant United States Attorney

99 N.E. 4th Street, Suite #300

Miami, Florida 33132-2111