UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-21095-CIV-TORRES

CONSENT CASE

DELROY ANTHONY GOLDING,

      **Plaintiff,**

vs.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY, *et al.*

      **Defendants.**

_____/

**DEFENDANT'S AMENDED PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

     Defendants, by and through the undersigned counsel file their Proposed Amended

Findings of Fact and Conclusions of Law as follows:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

     This is an action for a *de novo* hearing brought under 8 U.S.C. 1421(c), which was tried

before the Court without a jury.

     Plaintiff's application for naturalization was denied on September 15, 2003. He timely

filed an application for review pursuant to 8 U.S.C. § 1447(a). On December 22, 2004,

Defendants affirmed his original denial of his application for naturalization for his failure to

establish eligibility for naturalization.   Plaintiff is alleging that there are no statutory grounds to

deny his application for naturalization.

     Having considered the testimony of witnesses, the exhibits, the arguments of counsel, and

the entire record, the Court makes the following findings of fact and conclusion of law.

**FINDINGS OF FACT**

**1**.  Plaintiff testified during trial that he is a citizen and national of Jamaica, who was admitted to the United States on October 21, 1989 as a temporary agricultural worker. Although he was recruited in Kingston, Jamaica to work for Osceola Farms Company, at trial, however, when presented during cross-examination with a copy of the employment contract (entitled Agreement for Employment of Agricultural Workers) with Osceola Farms Company under the name of Michael Genas,[1] he denied that his employment with Osceola Farms Company was under a contract under the assumed name of Michael Genas.[2] He, however, did not provide a copy of the contract under which he worked for Osceola Farms Company. The very first paragraph of said contract, just above Article I, in making reference to the "J" number 522145 states, in part, "For the purpose of this Agreement the place of recruitment shall be deemed to be Kingston, Jamaica, and for West Indian workers the Contract No. is 522145."

That notwithstanding, Plaintiff received compensation for his work at Osceola Farms Company under the assumed name of Michael Genas as reflected by the statement of earnings and deductions filed by plaintiff as Plaintiff's Exhibits # 4 and # 5. Plaintiff's Exhibit # 4 dated 11/01/89 (merely 10 days after his admission to the United States) shows that compensation was paid by Osceola Farms Company to J 522145 Michael Genas. Plaintiff's Exhibit # 5 dated 11/15/89 shows that compensation was paid by Osceola Farms Company to J 522145 Michael Genas. Plaintiff testified that he did not cash his checks because it was under Michael Genas

---

[1]This contract for employment was filed as part 14 of Defendants' Motion for Summary Judgment (DE # 59). It was identified in said motion as Government Exhibit # 35.

[2]Plaintiff admitted having a contract with Osceola Farm Company. Deposition, p. 228.

name, that he returned them to his supervisor but this testimony was not credible nor believable since all along he has been planning to get this job, earn some money and move on. In fact, his testimony was in part contradictory since at one point he stated that he got part of the check back from his supervisor. He also admitted having a second identity card, produced here in the United States that had his picture and name as Michael Genas, which presumably he used for identity purposes.

As per plaintiff's own testimony at trial, the number J 522145 preceding the name of Michael Genas on those two pay stub exhibits was his "j number." It is exactly the same number that appears on plaintiff's identity card that he used to depart Jamaica under the farm labor program (Government Exhibit # 17). Plaintiff testified at trial that that was the same identity card that he presented to the immigration inspector in Miami, Florida in order to be admitted into the United States when he arrived at the Miami International Airport on October 21, 1989. I find that all these documents are cross-referenced with a common denominator identifier, namely, his "j" number 522145, a number that followed him wherever he went that tied together his assumed name of Michael Genas to this contract of employment with Osceola Farms Company, to his pay stubs, to his identity card created in Jamaica with information that he provided to the Ministry of Labor. I find that the genesis of the use of Michael Genas as his assumed name for this whole scheme started with Plaintiff's Exhibit # 6, the voter registration card, that plaintiff used to provide his identity at the time that he applied to the Ministry of Labor to participate in the migrant farm labor program. Mr. Lascelles Reece's testimony supports this finding in that he testified that the Jamaica Ministry of Labor uses information given and provided by the applicant farm laborer himself, in this case Golding, to prepare his identity card. It follows that since

plaintiff gave the Ministry of Labor false information, namely, the voter registration card of Michael Genas (Plaintiff Exhibit #6), the Ministry of Labor prepared his identity card with that name, which he subsequently used to depart Jamaica and to be admitted into the United States.

I find that plaintiff was admitted to work as a sugar cane cutter for a period of time covering from October 21, 1989 to approximately March 15, 1990 under that contract of employment under the assumed name of Michael Genas.(See Deposition of Delroy Anthony Golding, Government Exhibit #24, page 249, lines 1-7).[3] His testimony that he did not work under that contract is not credible nor believable.

However, as he testified in court, he soon thereafter abandoned his employment with Osceola Farms Company in violation of his employment agreement with them.  Plaintiff testified in court during trial that he never used the name of Michael Genas. However, his testimony is contradicted by his employment record with Osceola Farms Company as reflected by his exhibits # 4 and # 5 when he was working for them under that assumed name of Michael Genas. His testimony to this court that he did not use the referenced contract of employment with Osceola Farms Company under the name of Michael Genas was not credible, specially since he has recognized during cross-examination that the J 522145 was "my number" as he put it. This was further corroborated by the testimony of Mr. Reece, who testified that he works for the Jamaican Ministry of Labor here in Florida. He testified that this "J" number is the number under which a farm worker is known/identified when said farm worker starts to work under this farm labor

---

[3]"Q.  So the real fact is that when you came, you entered the United States –you entered into the United States under the name of Michael Genas. There's no record here that you can show that you entered under your name? A.: That's correct. There was an error made and that's how it happened."

program. On plaintiff's number J 522145 Mr. Reece testified that it is plaintiff's number under

the farm labor program which stays with him while he works under the program.

I found Mr. Reece's testimony truthful. His testimony on this point makes a lot of sense

as the court examined Government Exhibit #1, I-485, Application for Permanent Residence.

This J 522145 number also appears on question 7 as plaintiff identified it as his alien registration

number. Question 16 of this Government Exhibit # 1, shows the name Michael Genas as the

name under which plaintiff was admitted to the United States that goes in tandem with his

arrival/departure number (I-94) 419-16245 01 that he indicated on question 17 of this Exhibit #1

and also on his identity card (Government Exhibit # 17) as well as in Government Exhibit # 14,

Petition for Alien Relative (Form I-130). Plaintiff's Petition for Alien Relative also shows on

question number 7 that plaintiff used the name of Michael Genas, and on question number 14

that  he arrived under a Farm Labor Contract with the same Arrival/Departure (I-94) number that

includes the J number 522145. So, from any angle that the court looked at these identifiers, it was

evident that plaintiff was not telling the truth to the court when he denied that he was admitted to

the United States under an employment contract with Osceola Farm Company under the assumed

name of Michael Genas. He did not have a visa, but he had a contract as he testified during his

deposition.(See Deposition of Michael Genas, Government Exhibit #24, page 228).  His

testimony on this matter was not credible. It was refuted by the testimony of Mr. Reece who the

court found believable and truthful.

**2**.  Plaintiff testified during the deposition (Deposition of Delroy Anthony Golding, Government

Exhibit # 24, pages 171, 177-183, 208-216) that when he was departing Jamaica to come to the

United States as a temporary farm worker, he was given by the officers of the Ministry of Labor

his identity card with his picture and fingerprints. At the deposition he testified that he was able to actually see and inspect his identity card before he boarded the airplane.(Deposition, page 214).[4] It was then, he testified, that he noticed that the identity card had his fingerprints and picture but the name of Michael Genas showing his birth date as May 8, 1964. During his deposition he testified that he brought this matter to the attention of the Ministry of Labor officers before embarking on the plane, but that they told him not to worry since that was going to be addressed later.(Deposition, pages 177-216). Consequently, he testified that he was told to go ahead and move to the van that was going to take him to the airport to take the plane to come to the United States.

This testimony from plaintiff was directly contradicted by Mr. Reece, a government witness, who testified that had that testimony been true, that is, had plaintiff told the Ministry of Labor officers that his identity card had wrong information, then and there, said Ministry of Labor officials would have aborted plaintiff's boarding the plane to come to the United States. They would have stopped him from traveling that night and would have removed him from the boarding process and would have  required plaintiff to provide the correct and necessary information in order to produce his identity card with the correct information before he could travel under the farm labor program to the United States. Mr. Reece testimony was not controverted nor impeached.

Related to this process is the fact that plaintiff did not tell the Ministry of Labor officials that he had been arrested, tried and convicted for  unlawful wounding in Jamaica.(Government

---

[4]At page 214, line 16: "Q. Now, did you see this whole document, including the picture and identity card, there while you were still in Jamaica? A: Yes, I've seen it. They handed it to me."

6

Exhibits # 19 & # 22). Mr. Reece also testified that had plaintiff told the Ministry of Labor officials that he had been convicted of unlawful wounding, that would have disqualified him permanently from participating in the migrant farm labor program. According to Mr. Reece testimony, had plaintiff had revealed his conviction, he would not been allowed to travel to the United States; he would have been scrapped from the program. Conviction for commission of a crime is a permanent bar to participate in the program according to Mr. Reece's testimony. This court take notice that during his deposition, plaintiff admitted knowing that commission of a crime was a bar to participate in the farm labor program. (Deposition of Delroy Anthony Golding, Government Exhibit #24, page 226, lines 3-12).[5] It is more likely than not that it is why he did not reveal that conviction to the Ministry of Labor officials when procuring his authorization to participate in the farm labor program to come to the United States.

**3**. I find that plaintiff's testimony in court on this very same issue of his identity card was different from and contradictory to his testimony during his deposition. In court plaintiff stated that at the time that he left Jamaica to board the plane to come to the United States he did not know that his identity card had the name of Michael Genas. He testified under oath in court that before leaving Kingston, Jamaica, the officers of the Ministry of Labor in Kingston handed him a sealed envelope; that he did not know what was inside the sealed envelope; that he did not open the sealed envelope during his trip to the United States; that upon arrival at the Miami

---

[5]"Q. So you knew that –exactly. You knew that if you were convicted as an adult, you were convicted, you could not come in here as farm worker; correct?
A: As farm worker?
Q: Yes.
A: I knew if you were convicted as an adult, you couldn't come here as a farm worker, but I was never convicted–convicted as an adult, so I wasn't worried about this."

International Airport he handed the sealed envelope to the immigration inspector; that it was the

immigration inspector the one who opened the sealed envelope; that it was then,  upon receiving

the identity card from the immigration inspector when he discovered for the first time that said

identity card had Michael Genas name with a birth date of May 8, 1964.

I find these two testimonies, both under oath, to be mutually exclusive and contradictory.

They cannot both be true. I do not find plaintiff's testimony in this regard to be credible or

believable. He is not telling the truth.

Plaintiff's testimony regarding these facts was directly contradicted by the credible

testimony of Mr. Reece in that, as the farm laborer goes through the regular process of securing

his travel documents under the farm labor program in Jamaica, the farm laborer is given, in a

discrete manner, his identity card and other papers; he also receives the custom declaration form

separately. They are not handed in to the farm laborer stuffed in a sealed envelope as plaintiff

testified. No, they are handed separately as they move through the process. Besides, he would

need to show his identity card to board the plane.

**4**.  Plaintiff has provided Defendants conflicting information regarding his date of birth. The

Identity Card used by Plaintiff to gain admission into the United states under the assumed name

of Michael Genas shows a date of birth of May 8, 1964. (Government Exhibit # 17). Plaintiff's

passport (which he did not use to gain admission to the United States because he obtained it

while he was already in the United States) shows May 8, 1968 as Plaintiff's date of birth. On

September 7, 2004, during Plaintiff's administrative review hearing of the denial of his

application for naturalization, plaintiff gave Defendants two sworn statements under oath

attesting that his date of birth was May 8, 1964. (Government Exhibits #15 &16). The visa

8

petition filed on plaintiff's behalf (Form I-130) (Government Exhibit # 14), as well as the

Application to Register Permanent Residence or Adjust Status (Form I-485) (Government

Exhibit # 1) and the Applications for Naturalization (N-400) filed by plaintiff, show plaintiff's

date of birth as May 8, 1968. There is no record in the Defendants' systems of records showing

Plaintiff's admission into the United States under the name of Anthony Delroy Golding.

Defendant's only record of plaintiff's admission into the United States on October 21, 1989 is

under the assumed name of Michael Genas with a birth date of May 8, 1964 (Government

Exhibit # 18).

**5**. Mr. Spafford testified credibly that he was for many years an Immigration Inspector at the

Miami International Airport, where inspectors have, about 60 seconds to conduct the inspection

of arriving passengers. He testified that at that juncture there is no time for much explanation or

discussion. Either the arriving passenger is admissible or not. The passenger has to have his legal

papers in hand, not stuffed in a sealed envelope; those papers have to be in an acceptable fashion

in order for the passenger to be admissible. He testified that under the regular immigration

inspection process, had  plaintiff stated at the moment of inspection when plaintiff arrived for the

first time at the Miami International Airport, that his identity card had erroneous information, as

plaintiff claimed both in court and during his deposition, the immigration inspector would not

have admitted him at that moment, but would have immediately referred him to the secondary

inspection unit where there was more time to hear from plaintiff whatever explanations he may

have had for the so called erroneous information in his identity card. I find that Mr. Spafford

testimony was credible and truthful. His testimony was not impeached.

I find that at the time of admission, plaintiff willfully failed to disclose to the immigration

inspector his true identity, namely, Delroy Anthony Golding. Plaintiff instead willfully presented

to the immigration inspector an identity card of Michael Genas which had his picture instead of

the picture of Michael Genas. In addition, Plaintiff's own testimony at the deposition and in court

established that he had willfully placed his own fingerprints on the identity card bearing the name

of Michael Genas. I find, in fact, that plaintiff willfully pretended to be Michael Genas during the

inspection process in order to be admitted into the United States. Accordingly, he was admitted

as Michael Genas, not as Delroy Anthony Golding.

There was testimony of Mr. Reece which was corroborated by the testimony of Mr.

Spafford that he, Mr. Reece, had proper credentials from the United States immigration

authorities to work in the same area of operation of the United States immigration inspectors

assisting them in processing the admission of Jamaican farm workers like plaintiff. Mr. Reece

was in charge of receiving them, taking them to the immigration inspectors for inspection

processing and transporting them to their respective farms where they were going to work. In this

context Mr. Reece testified that had plaintiff told the immigration inspectors at the Miami

International Airport upon his arrival that his identity card had erroneous information, then and

there he would have been stopped and removed back to Jamaica in the first available return flight

for attempting to enter the United States using fraudulent documents. He further testified that in

that case that a farm worker so returned back to Jamaica would not be allowed to participate in

the future in the farm workers program. By doing so, such farm laborer would have disqualified

himself permanently from the program.

In this regard I find that both Mr. Spafford and Mr. Reece testified credibly and truthfully.

Based on the testimony of Mr. Spafford and of Mr. Reece, I find that in this regard plaintiff did

not testify credible and truthfully. Plaintiff was not candid nor truthful with the court. In fact I

find that in doing so, plaintiff perpetrated a fraud to the United States immigration authorities.

**6**. Plaintiff married Nancy May Golding, a United States citizen, on April 4, 1990. On

September 24, 1990, plaintiff's U.S. citizen wife filed a Petition for Alien Relative, Form I-130,

on plaintiff's behalf. In the Petition for Alien Relative (Form I-130), it was stated that Plaintiff

arrived at the United States under the name Michael Genas with the Arrival/Departure Record (I-

94) number 419-16245301 showing plaintiff's I.D. J. Number 522145 as his identity number for

purposes of the Jamaican migrant farm workers program.

**7**. On February 13, 1991, defendants, through Immigration Examiner Jorge Roig approved the

Petition for Alien Relative (Form I-130) together with the Application to Register Permanent

Residence or Adjust Status (Form I-485) (conditional residence). Jorge Roig, the immigration

examiner who interviewed plaintiff at the time and approved his visa petition and application for

adjustment of status testified that he approved plaintiff's application by mistake, error,

inadvertence or negligence because there was evidence in the administrative record that plaintiff

had been admitted to the United States under the assumed name of Michael Genas, which made

him inadmissible at entry. Mr. Roig testified that it was an oversight on his part in not noticing

that information, namely, that plaintiff was admitted under the assumed name of Michael Genas

which showed a different birth date. He testified that had he been aware of it, said facts should

have triggered a line of inquiry by him that should have resulted in the denial of said applications

on that date, or, at a minimum, a continuance for plaintiff to bring records of a lawful admission

under his true and correct name, to wit, Delroy Anthony Golding. Mr. Roig testified that because

of his oversight, mistake, inadvertence, error, or negligence, it did not trigger such line of inquiry

11

and the plaintiff's application for adjustment of status was approved even though plaintiff was statutorily ineligible for the benefit sought.

Jorge Roig, immigration examiner, testified that during the interview of plaintiff regarding his application for permanent residence (Form 1-485) (Government Exhibit # 1) on February 13, 1991, he placed plaintiff under oath and proceeded to ask plaintiff the questions printed on the application. As it relates question # 24, which asked plaintiff whether he has "been arrested, cited, charged, indicted, convicted, or imprisoned for breaking or violating any law or ordinance..." plaintiff answered "no." Plaintiff also answered "no" to question 26 U which asked "Have you committed or have been convicted of a crime involving moral turpitude?" Mr. Roig testified that, not knowing otherwise nor having received information or evidence to the contrary from plaintiff, under oath to tell the truth, he took plaintiff's answer as the truth of the matter. However it is a fact admitted by plaintiff that he had been arrested, charged and convicted in Jamaica for the crime of unlawful wounding on September 10, 1984. (Government Exhibits # 19 & # 22).

Mr. Roig testified that had plaintiff revealed to him the true answer to those questions, namely that he had been arrested and convicted in Jamaica, that would have opened or generated a line of inquiry about this matter that would have lead to either a denial of said application (I-485) on that same day, or at a minimum, a continuance for plaintiff to provide appropriate and necessary documentation and any waiver application, if applicable, relating to this conviction. Because plaintiff did not disclose his conviction, that line of inquiry did not happen and his application was approved. I find that plaintiff not having disclosed this conviction made Mr. Roig unable to advise him whether or not plaintiff needed to file a waiver. It made no sense of

Mr. Roig advising plaintiff that he needed a waiver since he was not told that such a conviction existed.

Plaintiff testified, however, that he did not have to reveal said conviction because he was a minor at the time of his conviction. According to plaintiff, under Jamaican law, his record of conviction as a minor is disregarded for the purposes of any enactment by or under which any disqualification or disability is imposed. (Government Exhibit # 23). The record reflects, however, that notwithstanding, that plaintiff was tried and convicted as an adult not as a minor. (Government Exhibits # 19 & # 22). I find that plaintiff was unable, however, to show any legal basis under the Unites States laws to support his decision not to reveal his conviction. I find that he was not able to show any instruction or immigration regulation or law that justified his withholding the information regarding his conviction as required under United States laws. I find that it was his willful decision not to reveal it because he knew that information would preclude him from becoming a lawful permanent resident.

Mr. Roig Testified that it was not up to plaintiff to pick and choose what to answer; plaintiff was required to be truthful about the facts, but I find that he was not. Mr. Roig further testified that it was up to United States immigration authorities to determine under the applicable United States immigration laws and regulations whether or not said conviction was relevant and material or not for purposes of the pending application for relief, namely, adjustment of status. It was not for plaintiff to willingly exclude such important facts from the answers required of him. I find that it was rather convenient under the circumstances for plaintiff to claim that because he was a minor he did not have to disclose his conviction. I find that to be a pretext rather than the truth. I find that what controls here is what the United States immigration laws and regulations

require, not what plaintiff may interpret from a Jamaican criminal legal provision. (Government Exhibit # 23).

The record reflects that the application for adjustment of status (Form I-485), Government Exhibit # 1, was prepared with the assistance of counsel, Mr. Roy L. Lucas. He attested to that by signing a certification to that effect. His signature appears on the 3rd page of the application, dated on 8/21/1990. His signature attested that: "I declare that I prepared this document at the request of the person above and that it is based on all information of which I have any knowledge." Plaintiff was the person who signed above because he was Mr. Lucas client on this matter at the time. Plaintiff's own signature above Mr. Lucas signature also has a certification of his own which reads: "I certify, under penalty of perjury under the laws of the United States of America, that the above information is true and correct..." Plaintiff testified in court that he had told his attorney, Mr. Lucas, that he had been arrested in Jamaica, but that he does not understand why Mr. Lucas in preparing the form answered "no" to question # 24. I find that by this testimony, plaintiff was trying to blame his former attorney for answering "no" to the question of his arrest and conviction in Jamaica. I do not find plaintiff credible and truthful in this regard. I give credence to the certification of his former attorney that prepared this form, and hence the answer to question # 24 based on the information that plaintiff provided him. I find that Mr. Lucas had nothing to gain for giving a false answer to question # 24. To the contrary, plaintiff had a lot to gain by keeping his conviction in Jamaica a secret. I find that the answer to question 24 was marked "no" because that was the information that plaintiff provided to his former attorney as he prepared this form. This answer conforms with plaintiff's previous pattern of failing to report that fact to the Ministry of Labor of Jamaica and to Mr. Roig, the immigration

examiner who interviewed him on this application.

I find the testimony of Mr. Roig to be credible and truthful. His demeanor attested to his veracity. In this regard, contrarily, I find not credible and not truthful plaintiff's testimony in court that he never used the name of Michael Genas. His own affidavit appended to this I-130 petition (Government Exhibit # 14), stated on paragraph # 3: "That in the past I have used the name of MICHAEL GENAS." He further stated in paragraph # 4: "That I make this Affidavit to acknowledge that my true name is DELROY ANTHONY GOLDING and that I used the name MICHAEL GENAS in the past and in support of my wife's sponsorship for me to come to reside with her in the United States." I find his testimony in court to be contradictory to his testimony in his affidavit. In this regard plaintiff testimony is not believable. He is not telling the truth about the matter at hand.  In fact his affidavit revealed that he secured immigration benefits by using his false name of Michael Genas when his wife petitioned for him.

**8**. Plaintiff filed his first application for naturalization on December 17, 1996.(Government Exhibit # 9).  Question number 15 of that application for naturalization asked "Have you ever been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic regulations?" As plaintiff testified during his deposition, he understood the question and answered "yes", as it related only to his other arrests in the United States; he was not referring to his arrest and conviction in Jamaica.[6] (Golding Deposition, Government Exhibit #24, page 97). Said application for naturalization was denied on August 30, 2000, for lack of prosecution based on plaintiff's failure to provide his fingerprints. Plaintiff

---

[6]"Q. Now, when you were referring to being arrested, to what arrests – what arrests were in your mind when you answered this question?
A: Well, what happened here in the United States, that's what I was referring to."

neither sought and administrative appeal nor pursue judicial review of said decision.

**9**. Plaintiff filed a second application for naturalization (N-400) with the assistance of counsel. Plaintiff signed this application on October 25, 1999. (Government Exhibit # 10). It appears that said application was not acted upon by Defendants. However, there is no record that plaintiff paid the filing fee for the application to be processed. Nonetheless, plaintiff answered "no" to the question 15 quoted in the previous paragraph relating to previous criminal history.

**10**. Plaintiff filed a third application for naturalization on March 27, 2001. (Government Exhibit # 11). This application was denied on September 15, 2003 for a variety of reasons relating to lack of good moral character. (Government Exhibit # 12). Plaintiff answered "yes" to the question 15 referred above relating to whether or not he had been arrested, convicted, etc. His answer, however, was limited to three arrests he acknowledged, namely, his arrest related to Publix Supermarkets (Aggravated Stalking, Government Exhibit # 2), his arrest for Possession of stolen property/handgun, (Government Exhibit #3), and his drug related arrest in Houston, Texas, (Government Exhibit # 4). He testified during his deposition that when answering this question, he did not have in mind his arrest and conviction from Jamaica. (Deposition, pages 129-130, Government Exhibit # 24).[7] During his deposition plaintiff testified, as it related this particular question on this particular application, that he did not have in mind his arrest and conviction in Jamaica. His reason for not disclosing said conviction was that he was a minor and he had been told that he did not have to mention it because he was under age. (Deposition, page 131). I find

---

[7]"Q. Let's clarify this...to what arrests were you referring to when you said: Yes, three arrests. Tell us please.

A. Publix, the gun that I purchased ... and when they stole my truck and filled it with marijuana." Deposition, page 130.

that he knowingly failed to disclose his conviction in Jamaica once more. At trial, although he admitted this conviction, plaintiff still claimed that because he was a minor at the time it did not count against him.

**11**. Subsequently, on October 16, 2003, Plaintiff filed an administrative appeal to the denial of his application for naturalization. During the review hearings, Plaintiff signed a sworn statement where he affirmed that his birth date was May 8, 1964. (Government Exhibit # 15 & # 16). On December 22, 2004, defendants issued a decision reaffirming its denial of plaintiff's Application for Naturalization based on their finding that Plaintiff had failed to establish statutory eligibility for naturalization. (Government Exhibit # 13). It is from this denial that Plaintiff filed the instant petition for a *de novo* review before this Court.

**12**. On February 15, 1996, Plaintiff was arrested for Aggravated Stalking on Case No. 96-002802CF10A. (Government Exhibit # 2). On May 30, 1996, Plaintiff was found not guilty by jury.

**13**. On December 19, 1999, Plaintiff was arrested for possession of stolen property/handgun. No conviction resulted from this arrest. (Government Exhibit # 3).

**14**. On April 24, 2000, plaintiff was arrested in Houston, Texas, and charged with conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana and possession with intent to distribute marijuana. Following a trial by jury, plaintiff was found not guilty as charged in the Indictment.(Government Exhibit # 4).

**15**. On April 5, 2002, while his third application for naturalization was pending, Plaintiff was arrested in Palm Beach County for Domestic Battery on charges filed by Joan Murphy, his land lady. Plaintiff was found not guilty following a bench trial. (Government Exhibit # 5). At trial

17

both plaintiff and Joan Murphy testified about this incident. Plaintiff testified that there erupted a controversy with Ms. Murphy regarding her opposition to him buying some glasses to the daughter of Penny Flanders that he treated as his daughter although she was not his biological daughter. Consequently, because he thought that she hided his car keys, he called the police. The police came and arrested him for domestic violence.

During plaintiff's deposition and also in court he stated that he called the police because of his car keys. However the government introduced a probable cause affidavit from the Palm Beach County Sheriff's Office (Government Exhibit # 5) wherein the arresting officer swears under oath to the fact that "Murphy stated that she & Delroy Golding were involved in an argument over the responsibility of his 2 yr. old daughter. Murphy states that Golding became angry and struck her with a closed fist in the chest two times and in the stomach once, then grabbed her by the right arm and threw her to the ground. Murphy provided a sworn written statement. I observed no visible injury. Murphy advised that Golding has struck her before in the 3 months that he has lived with her. Golding advised that Murphy threw herself to the ground and that he has never struck her. Golding was arrested for Domestic Battery."

Joan Murphy testified before me respecting this matter. I find that her testimony was biased to protect plaintiff. She denied that plaintiff struck her as written in the police arrest affidavit. Upon questioning by the court she admitted some "touching" by plaintiff which may have been the basis for the police arrest affidavit. I did not find her credible and truthful in her testimony. I find that there was no reason or gain by the Palm Beach Sheriff's officer to have stated in the probable cause arrest affidavit that plaintiff had hit her with the closed fist in the chest two times and in the stomach once grabbing her by the right arm and throwing her to the

18

ground if that was not in fact and in truth what she had attested to the police on that date. I find, however, that she had much to gain in negating such facts to protect plaintiff from any adverse finding for that conduct, specially now that he has married her.

Larry Rodneff, USCIS employee, credibly testified to these facts too. He testified that once plaintiff and Joan Murphy appeared before him regarding an internal appeal of his denial of the then pending application for naturalization (Government Exhibit # 11). Rodneff testified that Joan Murphy came in to his office because plaintiff requested it, not because he voluntarily wanted to examine her. Rodneff testified that the first thing he did was to place both of them under oath, which is the usual practice and procedure when examining applicants or witnesses. At certain point during the examination while addressing the referenced arrest affidavit for domestic battery, Rodneff noticed that plaintiff became upset upon hearing Murphy's testimony that he had struck her as stated in the referenced police arrest affidavit. Rodneff testified that indeed Ms. Murphy testified before him that plaintiff had struck her. He also testified that he asked her for a sworn statement to that effect, but she refused because she had already given a sworn statement to the police. He testified that he was concerned about Ms. Murphy's safety after observing plaintiff's demeanor regarding her testimony to him on this matter.

Rodneff also testified that he had no argument with Ms. Murphy during that examination and that he did not at any time attempted to have her alter, modify or change any judge's order on this same matter of domestic battery. Ms. Murphy had previously testified in court that Mr. Rodneff was rude and bad with her even attempting to force her to commit fraud and change the court order finding plaintiff not guilty of domestic battery to guilty. Mr. Rodneff flatly denied that was the case.

19

In this regard I do not find Ms. Murphy's testimony credible or truthful. I do not believe

her testimony. To the contrary, I find Mr. Rodneff's testimony credible, believable and truthful.

His professional demeanor was a testament to his professionalism and veracity.  If find that Mr.

Rodneff had nothing to gain in attempting to force Ms. Murphy to commit fraud. I find it totally

incredible Ms. Murphy's story where Mr. Rodneff will place in jeopardy his name, reputation,

job, career and good name to do such an irrational thing as Ms. Murphy testified about.

**16**. On January 20, 1994, a Restraining Order for 30 days for Domestic Violence was imposed on

Plaintiff in Broward County, Florida on Case No. 94-753-35. There was no evidence submitted

by plaintiff capable of erasing the value of this restraining order. I find that this order reflects

negatively on the moral character of plaintiff.

**17**. On May 2, 1995 another Restraining Order for one year for Domestic Violence was imposed

on Plaintiff  in the Circuit Court of Broward County, Florida in Case No. 05–5027-57. There was

no evidence submitted by plaintiff capable of erasing the value of this restraining order. I find

that this order reflects negatively on the moral character of plaintiff.

**18.**  Plaintiff testified that he had received a Notice of Naturalization Oath Ceremony from

USCIS to present himself on May 20, 2002 at 8:00 a.m. for an oath ceremony regarding his

pending application for naturalization.   As part of the standard procedure under the applicable

immigration laws and regulations, he was required to bring the notice back to the oath ceremony

with several questions on the reverse of the notice duly answered, dated and signed. He appeared

at the place and date indicated with the notice with the questions on the reverse signed under a

certification that the answers are true and correct. He dated it on May 17, 2002. He testified that

he was removed from the room because, according to USCIS officials, there was still pending

security/name clearances yet to be received regarding his application for naturalization. Ms.

Elaine Watson, Chief of the Citizenship Unit of the Miami USCIS office testified to this effect

that indeed he was removed from the oath ceremony on May 20, 2002 because there were

pending security/name check clearances on his application. She also testified that upon his

appearance plaintiff brought with him the original oath ceremony notice with the questions on

the reverse answered. She also testified that plaintiff answered question number three on the

reverse in an untruthful manner. He answered "no" to the question: "Have you knowingly

committed any crime or offense, for which you have not been arrested; or have you been arrested,

cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or

ordinance, including traffic violations." Ms. Watson testified on the record that USCIS had

records of his arrest for domestic battery from April 5, 2002 (barely a month prior to him signing

said notice). (Government Exhibit # 5). Although the oath ceremony form itself was not admitted

into evidence because there was at the time no evidence of having been previously identified as a

government exhibit (although it was part of the administrative file previously filed), Ms. Watson

testified about it.  Said testimony is part of the evidence on record on this case. I find that Ms.

Watson's testimony was credible, believable and truthful. To the contrary, when plaintiff was

asked about it, he was not able to provide a reasonable nor acceptable answer for why he failed to

provide an accurate and truthful answer to that question. I find that plaintiff's answer was not

true and that his answer to this question number three was a deliberate and conscious act of

plaintiff to lie about the existence of his domestic battery arrest. I further find that his deliberate

and willful answer to this question was done for the purpose of obtaining a benefit under the

immigration laws.

**19**.  Michael Krawczyk testified for defendants to the effect that plaintiff's application for

naturalization on appeal was denied for lack of good moral character because plaintiff failed to

carry his burden of proof for good moral character as established in 8 C.F.R. 316.10(a)(i) and

316.2(b). (Government Exhibit # 13). Mr. Krawczyk based this testimony in that plaintiff could

not produce documentary evidence that he reported his truck stolen. According to Krawczyk's

testimony, plaintiff was unable to produce trip tickets, manifests, documents, etc. to establish that

his truck was being sent to NY when it was apprehended in Texas with a full load of over one

thousands pound of marijuana. According to Krawczyk plaintiff testified to him that he would

never be able to produce such evidence because his "landlord" Ms. Murphy had destroyed

whatever papers he had. In arriving at the denial Krawczyk also considered that plaintiff had

appeared for an interview on his application on August 31, 2001, where he was asked about

previous arrests, etc. and plaintiff failed to report his April 25, 2000 arrest for marijuana sales in

Houston, Texas. If we add to it that plaintiff also failed to report his arrest in Jamaica at different

stages of the process, we can see his lack of candor and truthfulness where he lies for the purpose

of obtaining immigration benefits.  I find that Mr. Krawczyk testimony was credible, believable

and truthful.

## CONCLUSIONS OF LAW

### Jurisdiction

**20**. Jurisdiction appropriately lies with the instant district court. Section 310(c) of the INA

provides, in pertinent part, that "[a] person whose application for naturalization under this

subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this

Title, may seek review of such denial before the United States district court for the district in

which such person resides." Plaintiff resides in the local district. Moreover, plaintiff's N-400 was denied following the hearing before an immigration officer provided for in section 336(a) of the INA.

## Standard of Review

**21**. Section 310(c) of the INA provides that the review of the denial of an application for naturalization by the United States district court *shall* be *de novo* and that "the court *shall* make its own findings of fact and conclusions of law." (Emphasis added). "The court must decide the issues upon the testimony which it hears, and…neither the testimony heard by the Naturalization Examiner, his findings, nor his recommendation are of any consequence." *See Application of Murra*, 178 F.2d 670, 672 (7th Cir. 1949); *In Re Petition for Naturalization of Che-Tong Song*,147 F.Supp. 879, 883, (D.C., W.D., Arkansas, 1957); *Nagahi v. INS,* 219 F. 1166, 1169 (10th Cir. 2000) ("This grant of authority is unusual in its scope-rarely does a district court review an agency decision de novo and make its own findings of fact"). *See also Aparicio v. Blakeway*, 302 F.3d 437,440 (5th Cir. 2002), "Rather than conducting an administrative review, the district court reviews the case *de novo* and makes its own findings of fact and conclusions of law." It "is not limited to any administrative record but rather may be on facts established in and found by the district court de novo.*" Aparicio,* 302 F.3d at 445; *Chan v. Gantner*, 464 F.3d 289, 291 (2nd. Cir, 2006) ("... and is the *de novo*, and is not limited to any administrative record but rather may be on facts established in and found by the district court").

## Naturalization: Nature and Burden of Proof

**22**. At the outset it is important to note that citizenship by naturalization is a privilege gained by those who meet the qualifications imposed by Congress, the burden being upon the petitioner

throughout to establish his qualifications. "Except as otherwise provided in this subchapter, no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter." See section 318 of INA, 8 U.S.C. § 1429. As the Fifth Circuit of Appeals noted,

> Citizenship by naturalization is not demandable as of right. It is a privilege gained by those who meet the qualifications imposed by Congress. These qualifications are construed 'with a definite purpose to favor and support the government,' the burden being upon the petitioner throughout to establish his qualifications. Any doubt is resolved against the petitioner. It is only when all qualifications have been met, and all statutory requirements complied with, that a 'right' to be naturalized arises.

*Brukiewicz v. Savoretti*, 211 F.2d 541, 543 (5th Cir. 1954) (internal citations omitted).[8] *See also Jurban v. United States*, 255 F.2d 81, 84 (5th Cir. 1958) ("Naturalization is a privilege, to be given, qualified, or withheld as Congress may determine, and which the alien may claim as of right only upon compliance with the terms which Congress imposes."); *Taylor v. United States*, 231 F.2d 856 (5th Cir. 1956). *See also Plewa v. INS*, 77 F. Supp.2d 905, 909 (N.D. Ill., 1999) (Plaintiff bears the burden to show, by a preponderance of the evidence, that [he] is eligible in every respect to become a United States citizen, and any doubts are resolved in favor of the United States. *Berenyi v. Dist. Dir.,* 385 U.S. 630, 637 (1967)).

**23**. There must be strict compliance with all the congressionally imposed prerequisites before conferring citizenship. *See Fedorenko v. U.S.*, 449 U.S. 490, 506-507 (1981), 101 S.Ct. 737 at 747. In *Fedorenko*, the Supreme Court found that the defendant's service as a concentration camp guard and his *willful false statements* regarding that service made him ineligible for a visa

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

"as a matter of law," *id.* at 511, 514, and ordered that his citizenship be revoked. *Id.* at 518. In

doing so, the Court emphasized that lawful admission is a "statutory requirement" which

Congress imposed as a "pre-requisite" to naturalization under 8 U.S.C. § 1427(a)(1) and 1429,

*id.* at 515, and that the Court's task was to assure compliance with the statutory requirements for

citizenship. *Id.* at 508. *See Baumgartner v. United States*, 322 U.S. 665, 672 (1944) (citizenship

may be revoked "when the prescribed qualifications have no existence in fact"). Lawful

admission, in turn, requires that the alien possess a "valid unexpired immigrant visa" at the time

of entry into the United States. *Fedorenko*, 449 at 514-15; *United States v. Demjanjuk, 518*

F.Supp. 1362, 1380 (District Court, N. D, Ohio, 1981). Because Fedorenko was ineligible for a

visa and thus barred from admission, the Court held that he was not lawfully admitted, and thus

his citizenship was "illegally procured" under 8 U.S.C. § 1451(a). *Id.* at 515-16. This is precisely

the situation in the instant case where plaintiff's willful false statements about his identity, made

him ineligible for a visa or admission to the U.S. as a matter of law. There is no "existence in

fact" that he was lawfully admitted. Since plaintiff was ineligible for admission for having used

false documents to gain admission to the United States, and for having lied about his arrest in

Jamaica throughout his application process for adjustment of status and citizenship, his lawful

permanent resident status was fraudulently obtained and hence he does not meet the statutory

requirements to be a citizen. He gave false testimony for the purpose of obtaining immigration

benefits under the immigration laws.

**24**.  In order to be eligible for naturalization, the applicant must establish that he has been

admitted to the United States for permanent residence in accordance with all applicable

provisions of the INA.  *See* INA § 318.[9] Plaintiff failed to establish that he was lawfully

admitted. In fact it was clearly demonstrated by testimonial and documentary evidence that

plaintiff was not lawfully admitted. Mr. Spafford testified that had Mr. Golding appeared before

an immigration inspector with a request for admission stating, as he testified at trial, that his

identity card had wrong information about him, no immigration inspector would have admitted

plaintiff into the United States. The logical conclusion is that plaintiff did not state to the

immigration inspector at his time of admission as he testified in court that he did, that is, he just

presented his identity card pretending to be Michael Genas, said nothing about his identity card

having wrong information and in that fashion was admitted into the United States with false

documentation, which signifies that he was not lawfully admitted. Defendants introduced

Government Exhibit # 18 to that effect, which is the only documentary record of plaintiff's

admission under the assumed and false name of Michael Genas.

Although plaintiff claims that he is a lawfully admitted resident, defendants contest his

visa eligibility as a basis to deny naturalization. *See Matter of Longstaff*, 716 F.2d 1439, 1441 (5th

Cir. 1983); *United States v. Tittjung,* 235 F.3d 330, 336 (7th Cir. 2000); *United States v. Wittje*,

422 F.3d 479, 485 (7th Cir. 2005) ("Wittje is asking this court to reconsider and overrule our

decision in *Tittjung.* In that case we were faced with the precise argument raised here ...

('Tittjung puts forth that Article III courts are without jurisdiction to proceed in reviewing visas

and cancelling certificates of naturalization based on their findings of visa ineligibility.'). We

rejected that argument as without merit. *Id.* Nothing has changed). (Underscoring ours). See also

*United States v. Kumpf*, 2005 WL 1198893 at *3 (E.D. Wis.); U.S. Dailide, 316 F.3d 611, 619

---

[9] 8 U.S.C. § 1429

(6th Cir., 2003). There is evidence in the record to support the charge that plaintiff was excludable

at the time of entry since he presented fraudulent documents, to with, an identity card under the

name of Michael Genas with a birth date of May 8, 1964. Both Mr. Spafford and Mr. Reece

presented uncontroverted testimony that sustained the charge that plaintiff committed fraud at

entry. He was also excludable for having denied and given false testimony about his conviction

for unlawful wounding in Jamaica. As a result of the fraud at entry, plaintiff was inadmissible at

time of adjustment under § 212(a)(6)(C)(i).

**25**.  It is well-settled that the statutory five-year period of legal residence required for citizenship

cannot commence upon an unlawful entry. *See Kaplan v. Tod,* 267 U.S. 228, 230 (1925) ("[He]

never has been dwelling in the United states within the meaning of the Act. Still more clearly

[he] never has begun to reside permanently in the United States within the ... act."); ["He] was

still in theory of law at the boundary line and had gained no foothold in the United States"), *id..*

*See also Zartarian v. Billings*, 204 U.S. 170, 175 (1907); U.S. v. Lombera-Valdovinos, 429 F.3d

927, 929 (C.A. 9, Cal.), 2005.  Hence, because plaintiff was unlawfully admitted, he does not

meet the residence requirement for citizenship either. *See also* Arar v. Ashcroft, ___F.3d.___,

2008 WL 2574470, C.A. 2 (N.Y.) 2008 at *22 ("As an unadmitted alien, [Golding] as a matter of

law lacked a physical presence in the United States").

**26**.  An applicant for naturalization must also establish good moral character during the period of

required physical presence through the date of the administration of the oath of allegiance in a

public ceremony.  *See* INA § 316; 8 C.F.R. § 316.10.  He lacks good moral character under 8

C.F.R. § 316.10(b)(vi) because he gave false testimony when he appeared for the oath ceremony

on May 20, 2002 stating in question number three of the reverse of the notice that he had not

been arrested since the last interview when in fact he was arrested for domestic battery on April 5, 2002.

Plaintiff also lacks goof moral character under 8 U.S.C. 1101(f)(6). This section reads: "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was –(6) one who has given false testimony for the purpose of obtaining any benefits unde this chapter." Plaintiff testified in open court before me that he has not used the name of Michael Genas when in fact he did. This is giving false testimony for the purpose of obtaining an immigration benefit under the Immigration and Nationality Act. Plaintiff also gave false testimony during deposition when he gave testimony that he was given a pass to travel in Jamaica when he allegedly told the Ministry of Labor notice of wrong information in his identity card (Mr. Reece contradicted that testimony); he also gave false testimony at his deposition when he testified that he was given a pass at admission in Miami after allegedly notifying the immigration inspector about wrong information in his identity card (Mr. Spafford contradicted this testimony); he also gave false testimony to this court at trial when he stated that in Jamaica they gave him his identity papers stuffed in an envelope (Mr. Reece contradicted this testimony); he also gave false testimony to this court at trial when he testified that he was given a pass by the immigration inspector at arrival in Miami when he allegedly notified the inspector of wrong information in his identity card (both Mr. Reece and Mr. Spafford contradicted this testimony); he also gave false testimony to this court when he first testified that he only had one identity care, but in fact there was a second identity card produced here in the United States that he was using for identity purposes in the United States (the court inspected and copied this second identity card); he also gave false

28

testimony when he denied, both during his deposition and in court, having struck Ms. Murphy with a closed fist in the chest two times and in the stomach once (the police arrest affidavit contradicts his testimony).

Plaintiff also gave false testimony several times when he did not disclose his arrest and conviction in Jamaica during his adjustment of status interview and during his naturalization interview and the several times he was questioned on this application after his first interview on the application. In this context plaintiff's failure to reveal his Jamaican conviction constituted a willful and material misrepresentation. A willful misrepresentation must be made with knowledge of its falsity and with actual intent to deceive so that an advantage under the immigration laws might be gained to which the alien (plaintiff in this case) would not have otherwise been entitled. Matter of G-G, 7 I & N Dec. 161 (BIA 1956).

## Plaintiff's Naturalization Petition

**27**. Plaintiff is statutorily ineligible for naturalization. First, because plaintiff's manner of entry under an assumed name with a photo-switched identity card, plaintiff cannot establish that he was lawfully admitted to permanent residence "in accordance with all applicable provisions of this Act." *See* § 318 of the INA.[10] Secondly, plaintiff cannot establish that he is a person of good moral character pursuant to section 316 of the INA.[11] Specifically, plaintiff lacks good moral character as provided for in 8 C.F.R. § 316.10(a), 8 C.F.R. § 316.10(b)(2)(iii) and 8 C.F.R. § 316.10(b)(3)(iii).

Plaintiff all along argued that although arrested several times he was never convicted.

---

[10] 8 U.S.C. § 1429.

[11] 8 U.S.C. § 1427.

First of all that argument fails because he was convicted in Jamaica. However, in addition to that, USCIS may consider criminal offenses, under certain circumstances, whether or not an arrest or conviction is obtained. See 8 C.F.R. 316.10(b)(2)(iii) regarding the violation of any law relating to a controlled substance; 8 C.F.R. 316.10(b)(2)(iv) regarding an applicant who admit committing certain criminal acts for which there has never been a formal charge, indictment, arrest or conviction, whether in the U.S. or any other country; and 8 C.F.R. 316.10(b)(3)(iii) relating to unlawful acts.

<u>Plaintiff was not "lawfully admitted to permanent residence.</u>

**28**. Section 245(a)[12] of the INA authorizes aliens who have been inspected and admitted, or paroled into the United States, to adjust their status to lawful permanent resident if they meet certain preconditions, specifically, that the (1) the alien is eligible to receive an immigrant visa and such visa is available to the alien at the time of the application for adjustment of status; (2) the alien is admissible to lawful permanent resident status; and (3) the alien has made an application for adjustment of status.  The statute also requires aliens establish that they are entitled to adjustment of status as a matter of discretion.

Plaintiff was first admitted to the United States on October 21, 1989, as a special temporary agricultural worker.  Plaintiff gained his admission to the United States by presenting fraudulent documents, to wit:  he presented a document identifying himself as Michael Genas, date of birth 05/08/1964, with I-94 number 4191624501.  As a result of the foregoing, plaintiff was statutorily ineligible for adjustment of status under section 245(a) because he was

---

[12] 8 U.S.C. § 1255.

30

inadmissible to the United States pursuant to section 212(a)(6)(C)(i)[13] of the INA.  Section

212(a)(6)(C)(i) provides that "[a]ny alien who, by fraud or willfully misrepresenting a material

fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or

admission into the United States or other benefit provided under this chapter is inadmissible." [14]

The materiality requirement of 8 U.S.C. § 212(a)(6)(C)(i) is satisfied if "the misrepresentation

tends to shut off a line of inquiry which is relevant to the alien's excludability and which might

well have resulted in a proper determination that he be excluded. *See Matter of Bosuego,* 17 I&N

Dec. 125, 127-128 (BIA 1979); *Matter of S-and B-C,* 9 I&N Dec. 436 (BIA 1960).

**29**.  This ground of inadmissibility may be waived pursuant to section 212(i)[15] of the INA if the

alien seeking adjustment of status is the spouse of a United States citizen and he establishes that

the refusal of admission would result in extreme hardship to the United States citizen spouse.

The alien must also establish that he is entitled to the waiver as a matter of discretion.  An alien

seeking a waiver of inadmissibility under section 212(i) must file a Form I-601.  *See* 8 C.F.R. §

212.7(a)(1)(i). Plaintiff filed no waiver. That was because he gave false testimony about his

arrest and conviction in Jamaica. Had he had revealed it, he would have been advised to file it as

Mr. Jorge Roig testified. Once granted, a Form I-607 is completed and included in the alien's

file.  *See* 8 C.F.R. § 212.7(a)(3).

---

[13] 8 U.S.C. § 1182(a)(6)(C)(i).

[14] Since the 1984 conviction in Jamaica for the offense of wounding relates to plaintiff, plaintiff is also inadmissible under section 212(a)(6)(C)(i) of the INA for failing to reveal the same at the time of adjustment. Moreover, because the offense of wounding constitutes a crime involving moral turpitude, in that it is a crime where the victim suffered bodily harm in the hands of the offender, plaintiff is further inadmissible under section 212(a)(2)(A)(i)(I) of the INA which provides *inter alia* that "any alien convicted of…a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime…" is inadmissible.

[15] 8 U.S.C. § 1182(i).

**30**.  At the time of adjustment of status, plaintiff did not seek, nor was he granted, a 212(i) waiver.  Plaintiff's administrative file is devoid of any evidence establishing that plaintiff sought or was granted a waiver of inadmissibility.  Plaintiff's administrative file does not contain a Form I-601 Application for Waiver of Grounds of Excludability, nor does it contain a Form I-607 Order Re Waiver of Excludability Pursuant to Section 212(h), (i) and Permission to Reapply.  As a result, plaintiff was not "lawfully" admitted for permanent residence at the time that his application for adjustment of status was approved.  Inasmuch as plaintiff was not "lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter," plaintiff cannot meet the requirements of section 318 of the INA such that he is ineligible for naturalization.  *See U.S. v Koziy*, 728 F.2d 1314, 1318 (11th Cir. 1984) (Lawful admission to the United States is a statutory condition precedent to naturalization).

Plaintiff lacks good moral character pursuant to section 316 of the INA

**31**.  With regard to good moral character, section 316 of the INA[16] provides *inter alia* that "[n]o person…shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years … and (3) during all the periods referred to in this subsection has been and still is a person of good moral character…" The period referred to in § 316(c)(3) is the five year residency requirement set forth 316(a)(1); thus, section 316 creates a statutory five year good moral character requirement. Notwithstanding, section 316(e) provides that "[i]n determining whether the applicant has sustained the burden of establishing good moral character…the Attorney General shall not be

---

[16] 8 U.S.C. § 1427(a).

limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period."

Plaintiff lacks general good moral character under 8 C.F.R. 316.10(a)(2) based on his lack of candor during the naturalization process. As the government witnesses testified, at his first interview on the application for citizenship, plaintiff failed to reveal that he had been arrested for drug trafficking in Houston, Texas. He did not reveal his arrest until a second interview when USCIS specifically questioned him about it as a result of a report USCIS received concerning plaintiff's criminal history. Plaintiff's lack of candor regarding his criminal history is  best exemplified by his failure to disclose that he had been arrested for domestic violence battery on April 5, 2002 on the N-445 Notice of Naturalization Oath Ceremony which he presented with the expectation of being naturalized on May 20, 2002, about which Elaine Watson testified credibly and un-impeached.

**32**. Plaintiff filed his application for naturalization on March 27, 2001.  Therefore, under normal circumstances, the five year statutory requirement of good moral character would have begun from at least March 27, 1996 to the present.  However, because the statutory five-year period of legal residence cannot commence upon an unlawful entry under the legal authorities stated in paragraph number 25 above, plaintiff's statutory five-year period of legal residence has yet to commence  *See Molsen v Young*, 182 F.2d 480, 483 (5th Cir. 1950). The record reflects that during the statutory period, plaintiff was arrested three times on criminal charges:

12/17/1999 Arrested for possession of stolen property;

5/8/2000 Arrested for trafficking in narcotics;

4/5/2002   Arrested for domestic violence battery;

In addition, plaintiff was under criminal prosecution for extortion during the statutory period.

**33**.   The fact that plaintiff was not convicted of any of these offenses does not bar from consideration the conduct underlying these offenses.  For example, 8 C.F.R. § 316.10(b)(2)(iii) provides that an applicant shall be found to lack good moral character if during the statutory period the applicant violated any law of the United States…relating to a controlled substance, provided that the violation was not a single offense for simple possession of 30 grams or less of marijuana."  In addition, 8 C.F.R. § 316.10(b)(3) provides that "[u]nless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant (iii) committed unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b)(1) or (2)." There is ample evidence on the record of these types of acts, like for example his arrest for domestic battery and the restraining orders for domestic violence. (Government Exhibit # 8).

**34**.   Plaintiff's lack of good moral character is further evidenced by his lack of candor during the naturalization process.  At his first interview on the application for citizenship, plaintiff failed to reveal that he had been arrested for drug trafficking in Houston, Texas.  He did not reveal this arrest until a second interview when USCIS specifically questioned him about it as a result of a report USCIS received concerning plaintiff's criminal history.  Plaintiff's lack of candor regarding his criminal history is best exemplified by his failure to disclose that he had been arrested for domestic violence battery on April 5, 2002 on the N-445 Notice of Naturalization Oath Ceremony which he presented with the expectation of being naturalized on May 20, 2002,

about which Elaine Watson testified for the government.

Events outside of the statutory period which support a finding that plaintiff lacks good moral character include:

> 1/20/1994-2/19/1994 Temporary Restraining Order in effect against plaintiff as a result of domestic violence.

> 5/2/1995 Final Judgment on Injunction for Protective Order entered against the plaintiff.

> 2/12/1996 arrested for extortion;

In considering the plaintiff's conduct underlying each of these offenses and the other events enumerated above, when compared to the average citizen in the community, plaintiff clearly lacks good moral character. *See Rico v INS,* 262 F.Supp.2d 6 (E.D. N.Y. 2003). As a result, he is statutorily ineligible for naturalization.

**35**. Plaintiff's lack of good moral character is also exemplified by Plaintiff's consistent conscious failure to disclose during all the naturalization interviews that he had the fact that he had been arrested, convicted and sentenced for the crime of wounding in Jamaica. He also failed to disclose this criminal record during the interview process for the approval of his Form I-130 Petition for Alien Relative and for his adjustment of status to become a lawful permanent resident. Plaintiff also did not disclose said arrest and conviction when he renewed his alien resident card. All the immigration forms both for lawful permanent residence and for citizenship required him to disclose any arrests or convictions "inside or outside" the United States; there was no exception based on minority of age, as he has argued trying to justify his failure to disclose his criminal record in Jamaica. He as an applicant for an immigration benefit had no

authority nor discretion to chose and pick and withhold that information from defendants under the principle that because under a Jamaican law his criminal record as a minor was allegedly sealed he did not have to disclose it. It was up to defendants under the United States immigration laws to make a determination on wether the fact that he had a conviction in Jamaica while he was a minor was a record the United States immigration laws and regulations allowed them not to consider in assessing his qualifications to obtain the immigration benefits he was seeking at the time that said applications were being considered by defendants. Plaintiff himself admitted in his deposition that while seeking in Jamaica his permission to travel to the United States he knew that had he disclosed his criminal conviction for wounding, that crime would have disqualified him to obtain the Government of Jamaica's permission to become a temporary agricultural worker in the United States.

**36**.  Defendants' approval of the Petition for Alien Relative (Form I-130) filed on plaintiff's behalf by his former wife and defendants' approval of plaintiff's Application for Permanent Residence (Form I-485) on February 13, 1991 does not signify that defendants cannot claim that said approval granting plaintiff lawful permanent resident status was an error, mistake or negligence that made his admission unlawful, and hence making him ineligible for citizenship. Plaintiff argues that because he disclosed in those forms in writing that he was not admitted into the United States using his own name, but that he was admitted using a photo-substituted false identity card under the assumed name and the Arrival/Departure Record (Form I-94) number of Michael Genas with a birth date of May 8, 1964, the government waived its right to such a claim and hence is precluded from doing it now. Plaintiff is mistaken and his argument is without merits.

The Eleventh Circuit Court of Appeals found that an alien who was granted permanent resident status due to administrative inadvertence or error was not "lawfully admitted for permanent residence." *See Savoury v. U.S. Attorney General*, 449 F.3d 1307, 1313-14 (11th Cir. 2006). "The adverb 'lawfully' requires more than the absence of fraud. It requires consistency with all applicable law. According to 8 U.S.C. § 1101(a)(20), 'lawfully admitted for permanent residence' is 'the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant *in accordance with the immigration laws,* such status not having changed." *Id.* (Emphasis in the original). *See also Matter of Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983) ("The term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity.").  The applicable immigration law in this case includes 8 U.S.C. 1182(a)(6)(c)(i), which provides that "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." This provision renders plaintiff inadmissible because his manner of admission, namely, he availed himself of a false photo-substituted Jamaican Identity Card under the name of Michael Genas with a birth date of May 8, 1964. *See also Matter of Koloamatangi,* 23 I. & N. Dec. 548, 2003 WL 77728 (BIA 2003). Because plaintiff was inadmissible under 8 U.S.C. § 1182(a)(6)(c)(i) at the time that he was initially adjusted to permanent resident status, he was not entitled to that adjustment, and for that reason, he should be treated as though he had never obtained it, and hence ineligible to satisfy the requirements to become a citizen of the united States. *See Monet v. INS*, 791 F.2d 752, 753 (9th Cir. 1986) where plaintiff was not lawfully admitted because he concealed his true identity.

The Eight Circuit in *Arellano-Garcia v. Gongales*, 429 F.3d 1183, 1186 (8th Cir. 2005) concluded that where lawful permanent resident status is obtained by a negligent mistake made by the government, that status is not lawful. Plaintiff is in a similar situation. He received the grant of lawful permanent residence status by mistake. It applies to him what the Eight Circuit stated in *Arellano, id* at 1187: "We will not 'deem' him to be a 'lawfully admitted permanent resident' when he obtained permanent residence status through a mistake and was not otherwise eligible for the status adjustment." *See Orozco v. Mukasey*, 521 F.3d 1068, (9th Cir. 2008) (holding that alien was ineligible for adjustment of status because his entry into the United States was not lawful). In *Orozco*, although he presented himself for inspection at an authorized borer crossing station and was allowed to enter the United States, he entered the United States illegally by using another person's permanent resident card. In the instant case, plaintiff was admitted into the United States by him presenting a fraudulent identity card under the name of Michael Genas. His entry was unlawful and hence, he does not meet a requirement to become a citizen of the United States. *See also Lai Haw Wong v. INS*, 474 F.2d 739 (9th Cir. 1973). In the instant case, defendant's, by mistake, error or negligence granted lawful permanent resident status to plaintiff because they failed to see that his admission was unlawful.

**37**. The Court, therefore, concludes that plaintiff has failed to meet the requirements for naturalization because he was not lawfully admitted, in fact was inadmissible at entry for having been admitted with fraudulent documents, lacks good moral character and has not met the residency requirements. Therefore judgment is entered in defendant's favor. Hence, his petition to grant him citizenship is denied.

Dated: July 24, 2008                         Respectfully submitted,
      Miami, Florida
                                         R. ALEXANDER ACOSTA

                          By:    s/Milton Aponte_____
                                   MILTON APONTE
                                   Assistant United States Attorney
                                   Court ID. No. A5500417
                                   E-mail: Milton.Aponte2@usdoj.gov
                                   99 N.E. 4th Street, Suite # 300
                                   Miami, Florida 33132-2111
                                   Phone (305) 961-9404
                                   Fax (305) 530-7139

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 24, 2008, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day on all counsel of record or prose parties identified on the attached

Service List in the manner specified, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are

not authorized to receive electronically Notices of Electronic Filing.

                                              ___s/Milton Aponte_____
                                              Milton Aponte

### SERVICE LIST
### Delroy Anthony Golding v. Department of Homeland Security
**Case No. 05-21095-Torres**
**Consent Case**

Brian G. Becker
7171 N. Federal Highway
Boca Raton, Florida 33487
Attorney for plaintiff