# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 05-21095-CIV-TORRES

DELROY ANTHONY GOLDING,

      Plaintiff,

v.

DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

      Defendants.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW;
## FINAL JUDGMENT IN FAVOR OF DEFENDANTS

This is an action for a *de novo* naturalization hearing pursuant to Title 8, United States Code (U.S.C.), Section 1421(c) (Section 310(c) of the Immigration and Nationality Act (INA)); and Title 8, Code of Federal Regulations (C.F.R.), Section 336.9, which was tried before the Court without a jury.

Plaintiff's last application for naturalization was denied by Defendants on September 15, 2003. Plaintiff timely filed an application for review pursuant to 8 U.S.C. §1447(a), INA §336(a). On December 22, 2004, Defendants affirmed the denial of Plaintiff's application for naturalization for his failure to establish eligibility for naturalization. Plaintiff is alleging that his application for naturalization was denied without statutory basis. Pursuant to 8 U.S.C. §1421(c), INA §310(c), this Court has

jurisdiction over this action.  It is also noted that the parties consented to disposition of the case through the undesigned Magistrate Judge.

At trial the Court received documentary and testimonial evidence.  The testimonial evidence by the opposing parties was at times highly contradictory, requiring the Court to make credibility determinations.  Based on the testimonial and documentary evidence presented, and under a preponderance of the evidence standard, the Court makes the following findings of fact.  To the extent that any findings of fact constitute conclusions of law, they are hereby adopted as such; to the extent that any conclusions of law constitute findings of fact, they are also so adopted.  The Court notes in particular that most credibility findings necessary to the disposition of the case will be found in the conclusions of law discussion.

## I.   FINDINGS OF FACT

1.   Plaintiff is a citizen and national of Jamaica, who was admitted to the United States on October 21, 1989 as a temporary agricultural worker under an agreement with Osceola Farms Company, and pursuant to a special visa and work authorization program then in effect for seasonal foreign workers.

2.   When Plaintiff was admitted to the United States on October 21, 1989, Plaintiff was admitted under the assumed name Michael Genas.  Plaintiff produced an Identity Card displaying his photograph and fingerprints upon entry into the United States.  Plaintiff contends that the Identity Card was issued by the Jamaican Ministry of Labor bearing the name Michael Genas.  Plaintiff knew that he was entering the country and obtaining a special work visa by that name.

3.   Plaintiff claims that, when he was departing Jamaica to come to the United States as a temporary farm worker, the officers of the Jamaican Ministry of Labor gave him an identity card with his picture and fingerprints.  At his pretrial deposition Plaintiff testified that he able to actually see and inspect his identity card before he boarded the airplane and departed.  At trial, however, Plaintiff testified that, at the time he left Jamaica to board the plane to come to the United States, he did not know that his identity card bore the name Michael Genas.  Plaintiff testified under oath that, before leaving Kingston, Jamaica, the officers of the Ministry of Labor in Kingston handed him a sealed envelope, that he did not know what was inside the sealed envelope, and that he did not open the sealed envelope during his trip to the United States.  Plaintiff stated that upon arrival at the Miami International Airport, he handed the sealed envelope to the immigration inspector and that it was then, upon receiving the identity card from the immigration inspector, he first discovered that the name on the identity card was Michael Genas.

4.   Plaintiff has also provided conflicting information regarding his date of birth.  The Identity Card used by Plaintiff to gain admission into the United States under the assumed name of Michael Genas shows a date of birth of May 8, 1964.  The birth date on Plaintiff's passport reads May 8, 1968.  On September 7, 2004, during Plaintiff's administrative review hearing of the denial of his application for naturalization, Plaintiff gave Defendants two sworn statements under oath attesting that his date of birth was May 8, 1964.  The visa petition filed on Plaintiff's behalf, as well as the Application to Register Permanent Residence or Adjust Status and the

Applications for Naturalization, filed by Plaintiff, show Plaintiff's date of birth as May 8, 1968.

5.   Plaintiff testified in court during trial that he never used the name of Michael Genas while in the United States.  However, his testimony is contradicted by his employment record with Osceola Farms Company as reflected by his own trial exhibits (PX 4 and PX 5) when he was working for them under the assumed name Michael Genas.

6.   Although Plaintiff abandoned his employment with Osceola Farms Company before the expiration of the employment contract, at which point his temporary work visa would have expired, Plaintiff then married Nancy May Golding, a U. S. Citizen, on April 4, 1990 in Ft. Lauderdale, Florida.  Plaintiff thereafter applied for adjustment of status pursuant to 8 U.S.C. §1255(a), INA §245(a).  On Plaintiff's Application for Permanent Residence (Form I-485), and on Plaintiff's ex-wife's Petition for Alien Relative (Form I-130), Plaintiff listed the name Michael Genas under the section "other names used".

7.   On February 13, 1991, Defendants approved the Immigration Petition for Alien Relative (Form I-130) together with Plaintiff's Application for Permanent Residence (Form I-485).  Subsequently, Defendants approved Plaintiff's petition to remove the Conditions on his Permanent Residence (Form I-751).  During that process, Plaintiff did not disclose his past criminal record in Jamaica despite knowing that he had been tried and convicted as an adult and sentenced to probation.

8.  On February 15, 1996, Plaintiff was arrested for aggravated stalking in Deerfield Beach, Florida.  The charge was amended to threats and extortion in the second degree.  On May 30, 1996, Plaintiff was found not guilty by jury.

9.  On December 17, 1999, Plaintiff was arrested for possession of stolen property/handgun in Fort Lauderdale, Florida.  On January 7, 2000, the charges were nolle prossed.

10.  On April 24, 2000, Plaintiff was arrested for knowingly, intentionally and unlawfully conspiring to distribute marijuana and aiding and abetting the possession and distribution of marijuana in Houston, Texas.  On December 20, 2000, Plaintiff was found not guilty by jury on all charges.

11.  On April 5, 2002, Plaintiff was arrested in Boca Raton, Florida and charged with domestic battery.  On June 19, 2002, the Court found Plaintiff not guilty.

12.  On December 13, 1996, Plaintiff filed an Application for Naturalization (Form N-400) with Defendants.  On October 13, 1999, Defendants issued Plaintiff an appointment to appear at Defendants' Application Support Center in Davie, Florida on November 2, 1999 to have his fingerprints taken in furtherance of his application for naturalization.  On August 30, 2000, Plaintiff's application for naturalization was denied by Defendants for Plaintiff's failure to have his fingerprints taken.  Plaintiff then submitted an Application Information Worksheet issued by Defendants which verified that Plaintiff was in fact fingerprinted on November 2, 1999, as scheduled in the appointment notice.

13.  Defendants submitted into evidence at trial a second Application for Naturalization (Form N-400), signed by Plaintiff and dated October 25, 1999, but

Defendants failed to submit a receipt notice or a copy of the application stamped receipted.  Based on the evidence, it is presumed that the application was filed by Plaintiff but never adjudicated by Defendants.

14.  On March 21, 2001, Plaintiff filed another application for naturalization (Form N-400) with Defendants, which is the application that underlies this proceeding. On Part 7, Question number 15.b, Plaintiff checked the box asking if he had been arrested.  An INS examiner's contemporaneous notes on the application indicate that Plaintiff told the adjudicating officer that he had been arrested three times.  Although the application was stamped approved February 14, 2002, there is an "X" placed through the stamp.  Plaintiff did not disclose in the interview with the examiner his past Jamaican conviction.

15.  On April 5, 2002, Defendants issued a letter to Plaintiff stating, "You were scheduled to appear for an Oath Ceremony for Naturalization on Thursday, March 28, 2002 at 12:00 P.M.  Our records indicate you failed to appear for this ceremony.  You will be notified by INS of the date, place and time of your rescheduled Oath Ceremony."  Testimony was presented that Plaintiff appeared for an oath ceremony but was refused naturalization by Defendants since, at the time, there was no final disposition of the April 5, 2002 arrest for domestic battery.

16.  On September 15, 2003, Defendants denied Plaintiff's application.  The denial letter states, "Review of your record in file shows that you committed unlawful acts that adversely reflect upon your moral character. . . Further review of record in file also shows that on January 11, 1995 you gave a false claim to United States

citizenship to U.S. Border Patrol Officers in Ft. Lauderdale, Florida, while you attempted to enter the U.S."

17. On October 17, 2003, Plaintiff filed a Request for Hearing on Decision in Naturalization Proceedings (Form N-336) with Defendants. On December 22, 2004, the request was denied by Defendants. The denial letter states, " In reviewing your arrest history and your testimony relating to your arrest history it is not reasonable or prudent for the Citizenship and Immigration Services to believe that you have established good moral character in accordance with 8 CFR 316.10(a)(1) and 8 CFR 316.10(b)(3)."

18. On April 21, 2005, Plaintiff filed a Petition for a *de novo* Review of Application for Naturalization with this Court.

17. Following discovery, the Court denied Defendant's motion for summary judgment on March 13, 2008 [D.E. 69], finding that there were issues of fact in the record that precluded judgment as a matter of law. A bench trial before the Court was conducted on June 9-11, 2008, following which the parties submitted their proposed findings of fact and conclusions of law for the Court's consideration.

## II.  CONCLUSIONS OF LAW

### A.  Standard of Review

8 U.S.C. §1421(c), INA §310(c), provide that the review of the denial of an application for naturalization by the United States District Court "will be de novo, and the court will make its own findings of fact and conclusions of law.  The court may also

conduct, at the request of the petitioner, a hearing de novo on the application for naturalization."

"Judicial review of naturalization denials is always available and is de novo, and is not limited to any administrative record but rather may be on facts established in and found by the district court de novo." *Aparicio v. Blakeway*, 302 F.3d 437 (5th Cir. 2002). "The statutory provision allows unsuccessful naturalization applicants to ask the district courts to review the INS's denial of their applications. Upon request, the district court must undertake a full de novo review of the INS's denial. The court may not rely on the INS's findings of fact or law and, on request, must hold its own hearing on the naturalization application. Accordingly, even if the INS is allowed to make the initial decision on a naturalization application, *the district court has the final word and does not defer to any of the INS's findings or conclusions*." *United States v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004) (en banc) (emphasis added).

The reason that is so is because "Congress specifically calls for de novo review in naturalization cases, while ordering great deference in other immigration contexts. We do not find this to be coincidental. A person who is arguably entitled to be a United States citizen, with all of the privileges citizenship entails, is not rightly at the grace of the Attorney General, as other aliens are often considered to be. Therefore, before denying citizenship and the rights attendant to it, it would stand to reason that the district court should review the Attorney General's decision as if it were reviewing a citizen's claim that the government is unfairly denying him his rights. Section 1421(c) seems to reflect this logic by requiring district courts to make de novo findings of fact

and law." *O'Sullivan v. United States Citizenship & Immigration Services*, 453 F.3d 809, 812 (7th Cir. 2006). *See, e.g., Petition of Cardines*, 366 F. Supp. 700 (D.C. Guam 1973) ("By providing for a hearing in an open court on petitioner's demand in proceeding for naturalization, Congress did not intend mere court review of recommendations of naturalization examiner but rather a hearing de novo in which court must decide issues on testimony which it hears and in which neither testimony heard by examiner, his findings, or his recommendations are material.").

### B.    *Requirements for Naturalization*

Citizenship by naturalization is a privilege gained by those who meet the these qualifications imposed by Congress, the burden being upon the petitioner throughout to establish his or her qualifications. *See* 8 U.S.C. §1429, INA §318.  "Plaintiff bears the burden to show, by a preponderance of the evidence, that [he] is eligible in every respect to become a United States citizen, and any doubts are resolved in favor the United States." *See Berenyi v. District Dir., INS*, 385 U.S. 630, 637 (1967).  "There must be strict compliance with all the congressionally imposed prerequisites before conferring citizenship." *See Fedorenko v. United States,* 449 U.S. 490, 506-07 (1981).

In order to be eligible for naturalization, Plaintiff as the applicant must establish that he satisfies all applicable provisions of the INA.  *See* INA §318, 8 U.S.C. §1429.  These include:

1.    The applicant must be 18 years old.  *See* INA §334(b), 8 U.S.C. §1445(b).

2.      The applicant must be a resident continuously for 5 years subsequent to obtaining lawful permanent residence.  *See* INA §316(a), 8 U.S.C. §1427(a) and 8 C.F.R. §316.5.

3.      The applicant must have resided for at least three months within the state in which the petition was filed.  *See* INA § §316(a)(1), 319(a), 8 U.S.C. § §1427(a)(1), 1430(a).

4.      The applicant must be physically present in the U.S. for at least one-half of the 5 years (or one-half of 3 years if the applicant is the spouse of a U.S. Citizen).  *See* INA §316(a), 8 U.S.C. §1427(a).

5.      The applicant must have resided continuously within the United States from the date the application was filed up to the time of admission to citizenship.  *See* INA §316(a), 8 U.S.C. §1427(a)(2), 8 C.F.R. §316.2(a)(6).

6.      The applicant must not be absent from the U.S. for a continuous period of more than one year during the periods of which continuous residence is required.  *See* 8 C.F.R. §316.5(c)(1)(ii).

7.      The applicant must be a person of good moral character for the requisite 5 years prior to filing and up to the time of admission.  *See* INA § §316(a)(3), 319(a)(1); 8 U.S.C. § §1427(a)(3), 1430(a)(1); and 8 C.F.R. § §316.2(a)(7), 316.10, 329.2(d).

8.      The applicant must be attached to the principles of the Constitution and well disposed to the good order and happiness of the United States.  *See* INA §316(a)(3), 8 U.S.C. §1427(a)(3), and 8 C.F.R. §316.11.

9.     The applicant must be willing to "(A) bear arms on behalf of the United States when required by law, or (B) to perform noncombatant services in the Armed Forces of the United States when required by law, or (C) to perform work of national importance under civilian direction when required by the law."  *See* INA §337(a)(5)(A)-(C), 8 U.S.C. §1448(a)(5)(A)-(C).

10.     The applicant must not be: barred as a subversive, INA § §313, 316(f), 8 U.S.C. § §1424, 1427(f), and 8 C.F.R. §313; a member of the communist party, INA §313(a), 8 U.S.C. §1424(a); a deserter during war time who was convicted by court martial or civil court, INA §314, 8 U.S.C. §1425; an alien who has removal proceedings pending against him/her or an outstanding and final order of deportation, INA §318, 8 U.S.C. §1429; or an alien who applied for and received relief from the Selective Service system based on his or her alienage, INA §315(a), 8 U.S.C. §1426(a).

11.     The applicant must also demonstrate: an elementary level reading, writing and understanding of the English language, INA §312(a)(1), 8 U.S.C. §1423(a)(1), 8 C.F.R. §312.1; and a knowledge and understanding of the fundamentals of the history and government of the United States.  *See* INA §312(a), 8 U.S.C. §1423(a), 8 C.F.R. §312.2.

The Court initially finds that each of the preceding requirements have been met for purposes of this case, with the exception of the two requirements that Defendant points to as a basis to deny Plaintiff citizenship: (1) whether Plaintiff actually obtained lawful permanent residence as per INA §316(a), 8 U.S.C. §1427(a) and 8 C.F.R. §316.5.; and (2) whether plaintiff is a person of good moral character for the requisite 5 years

prior to filing and up to the time of admission as per INA § §316(a)(3), 319(a)(1); 8 U.S.C. § §1427(a)(3), 1430(a)(1); and 8 C.F.R. § §316.2(a)(7), 316.10, 329.2(d).

With respect to these requirements at issue in this case, the "burden of proof shall be upon such person to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States, but in presenting such proof he shall be entitled to the production of his immigrant visa, if any, or of other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry, in the custody of the Service." INA §318, 8 U.S.C. §1429.

And "an applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character . . . In accordance with section 101(f) of the Act, the Service shall evaluate claims of good moral character on case-by-case basis taking into account the elements enumerated in this section and the standards of the average citizen in the community of residence." 8 C.F.R. §316.10.

The Court must, therefore, be cognizant of the burden of proof the Plaintiff must sustain in order to be granted the right of citizenship. "[W]hen an alien seeks to obtain the privileges and benefits of citizenship . . . [h]e is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship. Because that status, once granted, cannot be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship

. . . . *[T]he burden is on the alien applicant to show his eligibility for citizenship in every respect.*"  *Berenyi*, 385 U.S. at 637 (emphasis added).

### C.    *Plaintiff Has Not Satisfied All Requirements for Citizenship*

Section 316 of the INA provides that "[n]o person . . . shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . . and (3) during all the periods referred to in this subsection has been and still is a person of good moral character . . ."  8 U.S.C. §1427(a).

Accordingly, Section 316 prescribes a statutory five year good moral character requirement.  Additionally, Section 316(e) of the INA states that "[i]n determining whether the applicant has sustained the burden of establishing good moral character . . . the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period."  8 U.S.C. § 1427(e).

Plaintiff has failed to meet his burden of satisfying each of these requirements by the preponderance of the evidence presented at trial.

### 1.  *Unlawful Entry and Related Misrepresentations*

In Plaintiff's pretrial deposition, the Plaintiff testified that when he was departing Jamaica to enter the United States through a temporary farm work program, he was provided with an identity card with his picture and fingerprints.

Plaintiff stated that he viewed the identity card before he boarded the airplane and, at that point, recognized the incorrect name on the card. He claimed that he notified the Jamaican Ministry of Labor officers of the error prior to boarding the airplane and that they allowed him to proceed and convinced him that the situation would be rectified later. (DX 24 at 171-216).[1]

At trial, however, Plaintiff directly contradicted his prior statements in the deposition. Plaintiff testified that, at the time he boarded the airplane in Jamaica, he did not know that the name on the identity card was "Michael Genas." He claimed that prior to his departure the Jamaican Ministry of Labor presented him with a sealed envelope, but that he did not open the sealed envelope during his trip to the United States and was unaware of the contents of the envelope. He then claimed that, upon his arrival at the Miami International Airport, he handed the sealed envelope to the United States immigration inspector. Plaintiff testified that he was not aware of the error on the identity card until he was speaking with the immigration officer in the United States.

It is clear that these two versions of the facts, both taken under oath, are mutually exclusive and inconsistent. The version of events retold at the deposition,

---

[1]    Assuming this version of events were true, we know from the evidence provided at trial, in fact, he apparently did little to rectify the problem. His pay stubs admitted at trial show that he was paid throughout this period under the Michael Genas name, up to at least the point that he left Osceola's employment. We also note that there was little evidence presented at trial as to the circumstances under which he left his employment at Osceola. A case could have been made that leaving employment, in order to become a roofing worker, constituted a breach of his H2A work authorization visa. But as that issue was never developed at trial, we do not rely upon it here to decide the pending matters.

which blamed errant Jamaican immigration workers who confused his real name, fingerprint, and picture, with someone named "Michael Genas," and who let him board the plane even though he told them at the time that they made a mistake, cannot be squared with the version of events attested to at trial.  Because the differences between the two versions are material, Plaintiff either came up with a false story in his deposition or at trial.  Either way, that demonstrates a serious lack of candor, and thus a lack of character, in connection with this proceeding.

If either version were true, of course, Plaintiff would rely on such to show that the government's claim that he was not lawfully admitted (because he entered into the country using false pretenses) could not bar his citizenship now.  The problem for the Plaintiff is that the Court does not find his testimony credible, at either the deposition or at trial.  Based upon the totality of the evidence presented to the Court, the Court finds that Plaintiff most certainly would have intended to travel to the United States as "Michael Genas."  The reason we know that to be true is that the Plaintiff produced at his deposition a Jamaican election registration form (known in that jurisdiction as a Certificate of Re-enumeration in Respect of Persons Previously Registered) (PX 6). That form was signed by a Michael Genas (in handwriting similar to that used by Michael Genas's employment agreement with Osceola) who lived in the St. Catherine District of Jamaica – the same area where Delroy Golding is from as evidenced by his passport (PX 10).  Significantly, the form was signed and witnessed by the registering officer on May 17, 1987 – over two years prior to the date that Plaintiff supposedly and unknowingly travelled to the United States through that name.

We know from reviewing his deposition that Plaintiff produced this document together with other documents that he brought with him to the deposition, and marked as exhibits to the deposition by the government's counsel who questioned him about it at the time. (DX 24 at 173-75). Plaintiff had no explanation then as to the date of the registration card other than it was part of the mistake that the Jamaican ministry of labor made when it authorized him to travel to the United States. Plaintiff forgot, however, that he did not travel under that program until two years later. If the Ministry of Labor made that mistake, why would the Jamaican election officials have provided Plaintiff with a registration form two years earlier under the same name, Michael Genas? Plaintiff never explained that discrepancy at the deposition or at trial.

The Court frankly did not believe Plaintiff's testimony at trial as to the secretive manner under which Jamaican labor officials provided him with his identity card and travel authorization at the airport in Jamaica. The credible testimony of witness Lascelle Reece, who formerly worked for the Jamaican Central Labor Organization that supervised the farmworker program that Plaintiff traveled under, showed that Plaintiff's story could not have occurred. Mr. Reece credibly testified that all farmworkers received their identity cards prior to the arrival at the airport. Those cards are presented to the customs officials together with the I-94 form. They are not provided to the worker in a "sealed envelope" as recounted by Plaintiff. And this independent witness also testified credibly that any error or confusion as to the correct name of the worker would have required the person to be taken off the flight before departing Jamaica.

The Court's resulting doubts as to the credibility of Plaintiff's story were then solidified when the Court reviewed all the relevant exhibits admitted at trial that evidence Plaintiff's knowing use of the name Michael Genas well before he ever sought to enter into the United States.  At some point well prior to his entry in the United States, Plaintiff began using the identity of Michael Genas, and used that identity to obtain the special work visa under which he entered the United States in 1989.

The Court need not find, of course, what precisely motivated Plaintiff's use of the Michael Genas alias.  The Court suspects, however, that it had some connection with the government's reliance on his false statements in his citizenship application as to his past arrest record.  Throughout Plaintiff's naturalization process, Plaintiff failed to disclose his prior arrest and conviction stemming from the Jamaican equivalent of a battery charge prior to Plaintiff's entry into the United States.  In 1984, Plaintiff was arrested and convicted of the Jamaican offense of "unlawful wounding."  Although Plaintiff was a juvenile at the time of his arrest, he was tried and convicted as an adult After being found guilty, Plaintiff served a period of eighteen months on probation. (DX 22).

Plaintiff testified that he was told by the Jamaican authorities that there would be no record kept of the conviction.  We know that is true for purposes of Jamaican law. (DX 22).  But we also know from Mr. Reece's testimony that anyone who had a criminal record in Jamaica would not have received a visa entry card.  In other words, it is certainly quite possible that, had Plaintiff used his true name when applying for the work visa, he may have been denied entry or at least an issue may have arisen regarding his entry that Plaintiff may have hoped to avoid.

In any event, what we do know with certainty is that when Plaintiff applied through an I-485 form for adjustment of status on August 21, 1990, and was interviewed on that application on February 13, 1991, Plaintiff did not disclose or check the box asking about any prior arrests *or* convictions. (DX 1). The examining officer who accepted and approved the application testified, again credibly, that he placed the Plaintiff under oath and reviewed each question with him, including the history of arrests or conviction question. The Plaintiff answered "NO" to that question.

We note that, again, the record shows with respect to this issue that Plaintiff has recounted different versions of events at different times, both with respect to how the particular "wounding" conviction occurred, as well as to why he did not disclose the conviction to the INA examiner. As to that latter point, for instance, Plaintiff testified in his deposition that he told his lawyer about his conviction but the lawyer somehow made a mistake and did not reflect his answer on the written form. (DX 24 at 9-15). Even if true, of course, this would not account for Plaintiff's similar answer under oath to the examining officer who reviewed the application.

At trial, however, he testified that he purposefully did not mention the Jamaican conviction based on his understanding from Jamaican officials that he did not have to mention his conviction to anyone. In other words, at trial he seemed to be taking the position that he purposefully did not disclose the conviction.

Though one would like to give the Plaintiff the benefit of the doubt, as to whether he truly did not disclose the Jamaican conviction based on his juvenile status, it is ultimately not possible to do. Given the repeated pattern of inconsistencies, the

lack of plausibility of his stories, and the Court's observation of the witness when he testified at trial, the Court finds that his testimony as to the use of the name Michael Genas, as well as to the reasons why he did not disclose to the examining officer that he had been convicted of a serious crime in Jamaica, is simply not credible.  The Court finds, as a result, that Plaintiff purposefully used the name Michael Genas to enter the country and purposefully failed to disclose his Jamaican conviction to gain permanent residency.

Contrary to Plaintiff's argument at trial and in his proposed findings of fact, Plaintiff's status as a permanent resident does not per se necessitate a finding that he meets the "lawfully admitted" prong under the INA.  The government can still contest his visa eligibility as a basis to deny naturalization.  To gauge visa eligibility, we look to see whether the individual was excludable at the time of entry:

> [W]hat is essential is lawful status, not regular procedure.  An alien is subject to deportation if "at the time of entry [he] was within one or more of the classes of aliens excludable by law existing at the time of such entry."  This clause overlaps the provision for deportation of any person who "is in the United States in violation of [the INA] or in violation of any other law of the United States." By providing for the deportation of excludable aliens, the Act implies that such persons, though present in the United States, were not "lawfully admitted."  The Act lists [ ] classes of persons who are "ineligible to receive visas and shall be excluded from admission into the United States." It would be paradoxical if a person who was ineligible to receive a visa and should have been excluded from admission became lawfully admitted simply because, by error, he was not excluded.

*Matter of Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983) (remanding case for trial de novo to determine whether applicant for naturalization had been excludable under the INA, and whether applicant was "lawfully admitted" as the INA requires for

naturalization) (internal citations omitted).   Even in circumstances where an individual has already been granted citizenship, the Government can contest the validity of a visa in a denaturalization proceeding. *See United States v. Tittjung*, 235 F.3d 330, 336 (7th Cir. 2000) ("We do not believe, nor have we found any case law to suggest that a certificate of naturalization acts as a *tabula rasa*, thereby precluding us from examining the validity of the visa upon which that certificate was granted.").

For instance, in *Fedorenko v. United States*, the Supreme Court was called upon to decide whether an individual's admission to the United States was illegally procured, thereby invalidating his citizenship. 449 U.S. 490, 505 (1981) (citizenship challenged on the basis that his service as a concentration camp guard rendered him ineligible for a visa).   The Court's majority opinion affirmed the decision to denaturalize the petitioner based on the finding that he was visa ineligible.   Granted, *Fedorenko* dealt with denaturalization under section 1451, and here we are concerned with the denial of citizenship under section 1427, but the inquiry is the same.   If anything, the different context presents a more formidable obstacle to Plaintiff's case, because he bears the burden in a naturalization case, while the government bears the burden in a denaturalization proceeding.

We turn, therefore, to the argument that Plaintiff was excludable at entry.   One basis for excludability that renders an alien ineligible for a visa – the only ground, in fact, raised by Defendants – is an entry procured by fraud or the willful misrepresentation of a material fact. 8 U.S.C. § 1182(a)(6)(C).   This basis for excludability is satisfied by a finding that the misrepresentation was deliberate and

voluntary. *See Forbes v. INS,* 48 F.3d 439, 442 (9th Cir. 1995) (citing *Espinoza-Espinoza v. INS*, 554 F.2d 921, 925 (9th Cir. 1977)). Proof of an intent to deceive is not required. Rather, knowledge of the falsity of a representation is sufficient. *Id.* The test of whether "concealments or misrepresentations [are] material is whether they ha[ve] a natural tendency to influence the decisions of the Immigration and Naturalization Service." *Kungys v. United States*, 485 U.S. 759, 772 (1988). "A misrepresentation or concealment can be said to have such a tendency . . . if honest representations 'would predictably have disclosed other facts relevant to [the applicant's] qualifications.'" *Id.* at 783 (Brennan, J. concurring) (quoting *id.* at 774 (opinion of Scalia, J., joined by Rehnquist, C.J., and Brennan, J.)). The government must "produce [] evidence sufficient to raise a fair inference that a statutory disqualifying fact actually existed." *Id.* at 783 (Brennan, J., concurring). *See also United States v. Puerta*, 982 F.2d 1297, 1303-04 (9th Cir. 1992) (reviewing opinions in *Kungys* and concluding that "Justice Brennan's view of materiality controls").

The record in this case shows that the Court denied summary judgment on this issue because there were unresolved issues of fact as to Plaintiff's explanations and justifications for the use of the alias and the non-disclosure of the Jamaican criminal history. [D.E. 69]. Similarly, the Court found that the record did not support a finding, as a matter of law, that these issues were material to the INS's approval of Plaintiff's permanent residency.

Now that a trial has been conducted on these factual issues, the Court finds, based upon the preponderance of the evidence presented, that there is more than

ample evidence in this record to raise a fair inference that a statutory disqualifying fact existed. These misrepresentations and non-disclosures of fact were deliberate and voluntary. The use of the Michael Genas alias and the non-disclosure of the Jamaican conviction had a material tendency to influence the decisions of the INS examiners. And, as the testimony at trial shows, the examiner involved who approved Plaintiff's permanent residency application was in fact influenced by the non-disclosures. Officer Jorge Roig testified that had he known of the truth of these facts he would have taken different action.

To be fair, as Plaintiff points out, Plaintiff did disclose the prior use of the Michael Genas alias to Officer Roig at the time that he applied for a change of status and for permanent residency. Officer Roig did not remember what, if anything, he did to follow up with Plaintiff regarding the use of the alias. That certainly undercuts the materiality element with respect to this issue. It does not, however, eliminate it. In the first place, Plaintiff did not disclose to the examiner upon his initial entry into the United States his true identity or that he was travelling with a visa issued under a false name. We can certainly find on this record that he was visa ineligible at that point in time given that his entry was procured by fraud or willful misrepresentation of a material fact. 8 U.S.C. § 1182(a)(6)(C).

Moreover, at the time that he sought a change of status and permanent residency after entering the United States, he did not disclose that he purposefully used the name to enter into the United States and avoid any problems with respect to his past criminal record. That fact was not disclosed. And that fact would have made a difference, at least to cause the examiner to conduct further inquiry.

But even assuming that this particular examiner simply committed an error in not following up simply based on the information that was disclosed to him, the law is clear that had the Plaintiff not used the alias originally he would likely not have been admitted into the country to begin with.  To reiterate, "it would be paradoxical if a person who was ineligible to receive a visa and should have been excluded from admission became lawfully admitted simply because, by error, he was not excluded." *Longstaff,* 716 F.2d at 1441.  Because Plaintiff would not have been visa eligible had he disclosed his true identity, then Plaintiff cannot satisfy the requirement that he be lawfully admitted to justify citizenship.

In any event, the failure to disclose the criminal history is by itself a different and more compelling basis to find that a willful misrepresentation took place.  Even if we believed Plaintiff's testimony at trial that he did not disclose his criminal history in good faith, based upon his understanding of the effect of Jamaican law, we would still have to find the non-disclosure purposeful even without an intent to deceive. *Forbes,* 48 F.3d at 442; *see, e.g., Azim v. Attorney General,* 314 Fed.Appx. 193, 196 (11th Cir. Sept. 3, 2008).  We find that he was aware of his prior conviction, understood the potential significance it had in seeking permanent residency in the United States, and did not disclose it.

As to whether that willful misrepresentation was then material, we find that it was undoubtedly material to Officer Roig, and we find him credible on this point.  The disclosure of that information would have made a difference as he explained at trial. Therefore, it is clearly a material representation that can be taken into account now

that Plaintiff has applied for citizenship.  *See, e.g., Forbes,* 48 F.3d at 442; *Kungys,* 485 U.S. at 772; *Tittjung,* 235 F.3d at 336.  "An alien's misrepresentation as to an application for a visa or for entry into the United States is material if:  (1) the alien is inadmissible on the true facts; or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he" was inadmissible.  *Azim,* 314 Fed.Appx. at 196 (Eleventh Circuit held that misrepresentation as to past criminal convictions may have been material if they "might well have resulted" in a finding of inadmissibility).

Here, the non-disclosure of the wounding conviction cut off a line of inquiry that Officer Roig testified he would have taken to determine whether the circumstances involved rendered Plaintiff ineligible for a change of status.  Therefore, he was not lawfully admitted for permanent residency given the willful misrepresentation as to his criminal conviction history.  8 U.S.C. § 1182(a)(6)(C).

Plaintiff repeats the position taken throughout this case that his earlier receipt of permanent residency, and preliminary approval of his citizenship applications, render these misrepresentations and non-disclosures moot.  We disagree.  *See also United States v. Wittje,* 422 F.3d 479, 485 (7th Cir. 2005) ("Wittje is asking this court to reconsider and overrule our decision in *Tittjung*.  In that case we were faced with the precise argument raised here [that Article III courts are without jurisdiction to proceed in reviewing visas and cancelling certificates of naturalization based on their findings of visa ineligibility].  We rejected that argument as without merit.  Nothing has changed.");  *United States v. Dailide,* 316 F.3d 611, 619-27 (6th Cir. 2003).

We conclude, therefore, that Plaintiff has not satisfied his burden of proving he entered into the United States lawfully under INA § 316(a), 8 U.S.C. § 1427(a), and INA § 318, 8 U.S.C. § 1429.  As such, his claim for naturalization fails.

## 2.   *Lack of Good Moral Character*

It is undisputed that the government's denial of Plaintiff's petition for naturalization was based in large part upon its officials' finding that Plaintiff lacked good moral character, as required by INS §316(a)(3), 8 U.S.C. § 1427(a)(3).  That finding was based in part upon the failure to disclose Plaintiff's Jamaican criminal history and the failure to disclose his true identity at the time of his entry.  The government's determination was also in great part motivated by the finding that Plaintiff lacked good moral character based upon a pattern of arrests and conduct that Plaintiff had after having been granted permanent residence.  That pattern of arrests included aggravated stalking, extortion, possession of stolen property, conspiracy to distribute marijuana, and domestic battery.  In other words, the INS concluded that the Plaintiff's personal history evidenced a general lack of good moral character, even though Plaintiff had never been convicted of any of the crimes alleged against him.

We reiterate here that we are not tasked with simply reviewing the INS's finding to determine if competent evidence supports it.  Were that the case, we would have to review in detail the Plaintiff's arrest history and conduct to determine if, notwithstanding his not-guilty verdicts or nolle prosecutions under criminal law, the facts and circumstances involved justified a denial of citizenship in this non-criminal proceeding.  Instead, we are tasked with reviewing this case anew – *de novo* – without

being bound by any of the findings of the INS examiners who denied Plaintiff's application. *See, e.g., Nagahi v. INS,* 219 F.3d 1166, 1169 (10th Cir. 2000) ("This grant of authority is unusual in its scope – rarely does a district court review an agency decision de novo and make its own findings of fact"); *Aparicio v. Blakeway,* 302 F.3d 437,440, 445 (5th Cir. 2002) ("Rather than conducting an administrative review, the district court reviews the case de novo and makes its own findings of fact and conclusions of law." It "is not limited to any administrative record but rather may be on facts established in and found by the district court de novo."); *Chan v. Gantner,* 464 F.3d 289, 291 (2nd Cir. 2006) (court finding "is not limited to any administrative record but rather may be on facts established in and found by the district court").

We, therefore, choose to focus our attention, not on Plaintiff's arrest history or conflicts with INS officials, but instead on what we have been able to observe firsthand in this record.  When a person seeking citizenship provides repeated and material false testimony, that person prevents the government and the Court from ascertaining pertinent information regarding the naturalization process.  This information is certainly both material and highly relevant.  It is, therefore, entirely appropriate to deny an application for naturalization based on petitioner's failure to tell the truth under oath as to something as important as citizenship.  *Berenyi*, 385 U.S. at 637.

It is not within Plaintiff's discretion to decide what information to disclose and what to withhold.  "The Government is entitled to know of any facts that may bear on an applicant's statutory eligibility for citizenship, so that it may pursue leads and make further investigation if doubts are raised."  *Id.* at 638.  A naturalization

applicant is deemed to lack good moral character if he falls into one of the seven non-exclusive classifications listed in 8 U.S.C. § 1101(f)(1)-(8).[2]  At issue for purposes of this discussion is classification six, which states that an applicant lacks good moral character if he "has given false testimony for the purpose of obtaining any [immigration] benefits...." 8 U.S.C. § 1101(f)(6).

"Testimony," for purposes of this statute, is limited to "oral statements made under oath." *Kungys,* 485 U.S. at 780.  In contrast with the willful misrepresentation provision discussed above in the lawful admission analysis, false oral testimony under section 1101(f)(6) need *not* relate to a material fact.  As the Supreme Court explained in *Kungys,* the statute "means precisely what it says," so that "even the most

---

[2]     This statute Title 8, section 1101(f)(1)-(8) includes the following classifications:

(1) a habitual drunkard; . . .

(3) a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (10)(A) of section 1182(a) of this title; or subparagraphs (A) and (B) of section 1182(a)(2) of this title and subparagraph (C) thereof of such section (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;

(4) one whose income is derived principally from illegal gambling activities;

(5) one who has been convicted of two or more gambling offenses committed during such period;

(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;

(7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;

(8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section).

The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character.

immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits" will justifiably prevent a finding of good moral character. *Id.* at 779-80 (defining the § 1101(f)(6) inquiry as whether "there is a subjective intent to deceive, no matter how immaterial the deception").

Therefore, Plaintiff's repeated half-truths, non-truths, and non-disclosures throughout this Court proceeding fully support the government's argument that Plaintiff attempted to conceal his past conduct, which conduct he believed would prove suspicious and damaging to his attempts for residence and naturalization. To put it differently, Plaintiff's lack of openness and credibility before the INS officials and the Court amply sustains a finding that Plaintiff did not meet his burden of showing good moral character to justify citizenship. *See, e.g., Tieri*, 457 F.2d at 393.

That lack of credibility is evidenced by the earlier detailed discussion of the record as it pertains to Plaintiff's entry into the United States. It is particularly significant to the Court that Plaintiff has had repeated opportunities to provide candid testimony in this case. Yet, rather than just acknowledging the truth and letting the chips fall where they may (which may have inured to the Plaintiff's benefit), Plaintiff maintained a persistent and unyielding pattern of telling one story and then another. Most particularly, Plaintiff's varying and incredible versions of how he came to be known as Michael Genas are simply disqualifying. The Court was fully prepared to give the Plaintiff every benefit of the doubt. But upon listening to his testimony in Court, comparing that testimony to what was testified to at length earlier in his deposition, and cross-referencing that testimony with the evidentiary record, the Court

could reach but one conclusion:  that Plaintiff was not being open and honest with the INS examiners and the Court throughout this proceeding.

To summarize, the Court finds that the Plaintiff provided false testimony to the INS examiner who processed his permanent residency application by not disclosing his criminal conviction in Jamaica.  Even if that misrepresentation was not material for the lawful admission analysis, which we think it was, this failure to disclose evidences a lack of moral character.

That non-disclosure undoubtedly occurred outside of the five-year statutory period provided for in 8 U.S.C. § 1427(a)(3).  We can take it into account, however, because it mirrored the non-disclosure that took place after Plaintiff filed for naturalization.  Plaintiff was interviewed under oath for his application in 2003. Despite being asked again, in conjunction with his I-400 application, whether he had ever been arrested or convicted before, he still did not disclose his Jamaican criminal history.  He again failed to disclose it even though he understood quite clearly by that point that his criminal history was quite important to the examiner, given that they discussed at length the events involving criminal arrests for which he was not convicted.  It is unfathomable that the Plaintiff would not come forward with his past conviction under those circumstances, especially given that he obviously knew by that point that the examiners had serious questions regarding his application.

When his application was denied, Plaintiff then initiated this action seeking review of the INS's decision.  When asked questions in his pretrial deposition regarding the Jamaican arrest and his use of the Michael Genas identity, the Plaintiff provided sworn testimony under oath.  When confronted with those answers at trial, Plaintiff

provided different stories as to both issues.  And the Court finds that he *still* has not provided credible and truthful testimony regarding either.  The Court does not believe Plaintiff's testimony that his entry into the United States as Michael Genas was not knowing and purposeful.  And the Court also does not believe Plaintiff's testimony that he did not disclose his Jamaican conviction based upon what his lawyer told him he could do, based on what his understanding of Jamaican law was, or based upon any misunderstanding of what the question was.  He knew that he had been tried as an adult for wounding another individual.  That information should have been disclosed. We thus find that the Plaintiff purposefully did not disclose that conviction based upon his fear that it would hamper his ability to obtain citizenship.

Therefore, we conclude that Plaintiff has repeatedly engaged in a subjective intent to deceive, which under section 1101(f)(6) means that he is disqualified from citizenship based upon false testimony throughout this immigration proceedings. Plaintiff has clearly not met his burden of showing that he has the requisite moral character necessary for citizenship.  And to the extent there are any doubts in this record, those doubts inure in the government's favor, not the Plaintiff's.  *Berenyi,* 385 U.S. at 637; *Kungys,* 485 U.S. at 780; *see, e.g., Aboud v. INS,* 876 F. Supp. 938, 940 (S.D. Ohio 1994) (denying naturalization based upon false testimony in immigration proceedings under section 1101(f)(6)); *United States v. Abdulghani,* 671 F. Supp. 754, 756 (N.D. Ga. 1987) (same).

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      Plaintiff's claim seeking *de novo* review of the denial of Plaintiff's naturalization action has been fully considered and rejected.  The Court finds that Plaintiff has not proven, by a preponderance of the evidence, that he is eligible in every respect to become a United States citizen under 8 U.S.C. §§ 1427, 1429.

2.      Judgment is entered in favor of the Defendants and as against Plaintiff in all respects.  Plaintiff shall not recover or obtain anything from this action.[3]

3.      This case is now CLOSED.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 27th day of July, 2009.

EDWIN G. TORRES
United States Magistrate Judge

---

[3]      Notwithstanding the ultimate resolution of this case on the merits, the Court appreciates the advocacy, dedication and work of all counsel who participated in this case.  Plaintiff in particular was well represented by trial counsel in the case.